Suzanne DECK, et al., Plaintiff,

v.

CITY OF TOLEDO, et al., Defendant.

No. 3:98 CV 7451.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 19, 1999.

William B. Senhauser, John Mark Finnegan, Equal Justice Foundation, Toledo, OH, Thomas J. Zraik, Sylvania, OH, for Suzanne Deck, David Wielinski, Daniel Asbury, Kelly Keefe, Gloria Steger, Robert Gerst, Daniel D. Wilkins.

Barbara E. Herring, Geoffrey H. Davis, Department of Law, Toledo, OH, for City of Toledo, City of Toledo Department of Transportation, Carlton Finkbeiner.

Marlon A. Primes, Office of the U.S. Attorney, for United States of America.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Plaintiffs' motion for summary judgment. For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

### BACKGROUND

On August 8, 1998, Plaintiffs, seven individuals with mobility impairments, filed this action against the City of Toledo, Ohio and its mayor, (collectively, "the City") seeking to enforce compliance with the standards for curb ramps set forth in the Americans with Disabilities Act ("ADA") and its accompanying regulations. *See* 42 U.S.C. § 12132; 28 C.F.R. pt. 36, app. A. Plaintiffs allege that the City has repeatedly failed to comply with the federal regulations requiring it to install curb ramps and otherwise to make streets, roads, sidewalks, intersections and other facilities accessible whenever it alters or resurfaces such facilities. *See* 28 C.F.R. § 35.151(b) & (e). Plaintiffs seek declaratory and injunctive relief, damages, costs, and fees.

On November 20, 1998, this Court found that Plaintiffs were likely to prevail on the merits of their claims and entered a preliminary injunction ordering Defendants to bring thirteen listed ramps into compliance with the ADA. On November 18, 1999, the Court certified the action as a Fed. R.Civ.P. 23(b)(2) class action.

Plaintiffs have filed a motion for summary judgment finding that (1) Defendants have repeatedly failed to install curb ramps where required or have installed defective curb ramps in each of the years at issue; and (2) Defendants lack policies and procedures designed to ensure compliance with the ADA. They have requested a permanent injunction requiring the City to: (1) identify all intersections where sidewalks have been reconstructed or streets resurfaced since 1992; (2) inspect and report to Plaintiffs the precise location of all ramps that fail to conform to the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") or where ramps are absent; (3) set out a plan to repair, replace, or install acceptable curb ramps at these locations according to a time table set by the Court after consultation with the parties; (4) implement and adhere to a uniform system designed to ensure compliance with the ADAAG in the future; and (5) submit periodic reports to Plaintiffs detailing progress in identifying and correcting the defective ramps.

Previously in this case, Defendants sought dismissal of all claims arising more than two years prior to the date on which Plaintiffs brought suit, arguing that the applicable two-year statute of limitations barred those claims. The Court denied that motion, holding that the continuing violation doctrine applied to Plaintiffs' claims, so that relief for violations occurring prior to the onset of the limitations period was not barred. Upon Defendants' motion, the Court certified that holding for immediate appeal pursuant to 28 U.S.C. § 1292(b). Thus, the briefing on the motion that is now at bar addresses only Plaintiffs' claims arising on or after May 6, 1996.

The two issues before the Court are whether, as a matter of law, Defendants have repeatedly failed to install curb ramps that comply with the ADA since

May 6, 1996, and whether Defendants have violated the ADA by failing to promulgate and maintain policies and procedures designed to ensure compliance with the ADA. Defendants have filed opposition to Plaintiffs' motion, and Plaintiffs have replied thereto. The Court addresses the parties' contentions below.

### DISCUSSION

#### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

#### B. Violations of ADA after May 6, 1996

Plaintiffs first move for a ruling that Defendants, as a matter of law, repeatedly failed to install curb ramps that comply with the Americans with Disabilities Act Accessibility Guidelines since May 6, 1996. The ADAAG set forth certain requirements for curb ramps on all newly constructed or altered streets, roads, highways, and pedestrian walkways. 28 C.F.R § 35.151(e). Curb ramps must be provided wherever an accessible route crosses a curb. 28 C.F.R. pt. 36, app. A, 4.7.2. The slope of any such curb ramps cannot exceed 1:12. 28 C.F.R. pt. 36, app. A, 4.7.2 & 4.8.2. Any transition from the ramp to a walk, gutter, or street must be flush. 28 C.F.R. pt. 36, app. A, 4.7.2. Curb ramps at marked crossings must be wholly contained within the markings. 28 C.F.R. pt. 36, app. A, 4.7.9. All ramps must have level landings of at least 60″ at the top and bottom of the ramp. 28 C.F.R. pt. 36, app. A, 4.8.4.

■ Plaintiffs claim that Defendants have repeatedly failed to comply with these regulations. In support, they have submitted affidavits and videotapes demonstrating the following violations since May 6, 1996:

| |
|---|
| 1996[1] installation of curb ramps along Huron, at the intersections of Orange, Beech, Jackson, and Adams<br><br>    11 of 21 inspected ramps have a slope steeper than 1:12.<br><br>    One ramp has a lip of 1" where the ramp meets the street. |
| 1996 installation of curb ramps along Central, at the intersections of Executive Parkway, Wicklow, and Lincolnshire<br><br>    4 of 11 inspected ramps have a slope steeper than 1:12. |
| 1996 installation of curb ramps along Collingwood, at the intersections of Bancroft, Woodruff, Jefferson, Monroe, I-75 ramp, and Dorr<br><br>    10 of 26 inspected ramps have a slope steeper than 1:12. |
| 1996 street resurfacing of Bennett Road, at the intersections of West Alexis, Regina Parkway, Mayfair, Cloverdale, and Laskey<br><br>    Ramps either were not installed or have slopes steeper than 1:12 in all but one instance.<br><br>    Many ramps lack level landings at the top of the ramp. |

1. The record does not indicate the time of year the 1996 construction projects were completed. The Court takes judicial notice, however, that the Toledo construction season begins late enough in the year that it is highly unlikely any of the 1996 projects were completed before May 6, 1996.

1996 street resurfacing of Douglas Road, at the intersections of Sylvania, Charlestown, Portsmouth, Georgetown, Berdan, Beaufort, Lagenderfer, Groveland, Ledyard, Monroe, and Central.

Ramps were not installed at the intersections of Portsmouth, Georgetown, Berdan, Lagenderfer, Groveland, and Ledyard.

Ramps were not installed on some corners at the intersections of Regina Parkway and Mayfair.

The ramps at Monroe and Douglas are not contained in the crosswalks.

Virtually all of the ramps lack level landings at the top of the ramp.

Many of the ramps have lips of 2" where the ramp meets the street.

1996 street resurfacing of Bancroft Street, at the intersections of Elm, Lagrange, Locust, Walnut, Cherry, North 12th St., North 13th St., Kent, North 14th St., Jerome, Vermont, Franklin, Warren, Putnam, Fulton, and Ashland.

20 of 54 inspected ramps have a slope steeper than 1:12.

1996 street resurfacing of Talmadge at the intersections of Laskey and Alexis

Ramps were not installed in 2 locations where they were required.

2 ramps have a slope steeper than 1:12.

One ramp has a lip of 2" where the ramp meets the street.

1996 street resurfacing of Glendale, at the intersections of the entrance to the Maumee Valley Day School and Cass

Ramps were not installed at the intersection of Glendale and Cass.

1 ramp has a slope steeper than 1:12 and a lip of 2" where the ramp meets the street.

| |
|---|
| 1996 street resurfacing of Woodville Road, at the intersections of Holmes and Varland<br><br>    3 ramps have slopes steeper than 1:12.<br><br>    One ramp has a lip of 3" where the ramp meets the street.<br><br>    One ramp is not contained in the crosswalk. |
| 1997 sidewalk replacement on Wright, at the intersections of Wilton and Spencer<br><br>    No curb ramps were installed. |
| 1997 sidewalk replacement on Powhatan Parkway, at the intersections of Christie, Hughes, and Central<br><br>    Curb ramps were not installed in 15 locations where they were required.<br><br>    1 of 3 inspected ramps has a slope steeper than 1:12. |
| 1997 sidewalk replacement on Bakewell, at the intersections of Bogar, Wittenmore, Paine, Craig, and Moravan<br><br>    Curb ramps were not installed in 18 locations where they were required.<br><br>    5 of 12 inspected ramps have a slope steeper than 1:12.<br><br>    Several ramps have lips in excess of 1" where the ramp meets the street. |
| 1997 sidewalk replacement on Caledonia, at the intersections of Wittenmore, Paine, Craig, and Moravan<br><br>    Curb ramps were not installed in 30 locations where they were required.<br><br>    1 of 2 inspected ramps has a slope steeper than 1:12. |
| 1997 street resurfacing of Adams, at the intersections of St. Clair, 18th St., and 17th St.<br><br>    6 ramps have a slope steeper than 1:12.<br><br>    5 ramps have lips ranging from .5" to 2" where the ramp meets the street.<br><br>    One ramp is not contained in the crosswalk. |

1997 street resurfacing of Dearborn, at the intersections of Dearborn and Mott

    Curb ramps were not installed in 2 locations where they were required.

    3 ramps have a slope steeper than 1:12.

    2 ramps have lips of 2" where the ramp meets the street.

    1 ramp is blocked by a telephone pole.

1997 street resurfacing of South, at the intersections of Congress, Broadway, and Courtland

    1 ramp has a slope steeper than 1:12.

    2 ramps have lips of at least 2" where the ramp meets the street.

    One ramp is not contained in the crosswalk.

1997 street resurfacing of Glendale, at the intersections of Byrne, Green Valley, Valley Way, and Eastgate

    Curb ramps were not installed in 2 locations where they were required.

    4 ramps have a slope steeper than 1:12

    3 ramps have lips of at least 2" where the ramp meets the street.

    1 ramp is blocked by a traffic light pole

1998 sidewalk replacement on Hampton, at the intersections of Prouth, Grafton, Nelson, and Arlington.

    Curb ramps were not installed in 30 locations where they were required.

    2 of 4 inspected ramps have a slope steeper than 1:12.

1998 sidewalk replacement on Milroy, at the intersections of Oakdale, Sylvester (East), Sylvester (West), Atkins, Wardell, and Florence

    Curb ramps were not installed in 8 locations where they were required.

1998 Sidewalk replacement on Nevada, at the intersections of Leonard, St. Louis, Arden, Miles, Prentice, Euclid, Federal, and Main.

    Curb ramps were not installed in 14 locations where they were required.

In short, Plaintiffs have documented at least 302 separate locations in which the City has violated the ADAAG regulations for curb ramps since May 6, 1996.

■ Defendants do not dispute any of Plaintiffs' factual allegations. Despite this overwhelming evidence that the City has repeatedly violated the ADA by failing to install compliant curb ramps, the City argues that summary judgment is inappropriate because the City has taken steps to correct the thirteen curb ramps that were the subject of this Court's November 20, 1998, preliminary injunction.

Defendants' argument is not convincing. There is no factual dispute in this case that the City violated the curb ramp requirements of ADA on at least 302 separate occasions between 1996 and 1998. Therefore, Plaintiffs' motion for summary judgment on the issue of the City's failure to comply with the ADA must be granted.

### C. Failure to Maintain Policies and Procedures Designed to Ensure Compliance with the ADA

■ Plaintiffs have also moved for summary judgment that the City has violated ADA by failing to promulgate and maintain policies and procedures designed to ensure compliance with the ADA. The parties have briefed the factual issue of whether the City has policies and procedures designed to ensure compliance with the ADA in effect, but have neglected a more basic issue—the issue of whether the City's failure to have policies and procedures designed to ensure compliance with the ADA constitutes a violation of the ADA for which Plaintiffs are entitled to redress. It is not.

The federal regulations accompanying Title II require a public entity to perform a self-evaluation within one year of Title II's effective date of January 26, 1992 to identify any services, policies and practices that do not comply with Title II. 28 C.F.R. § 35.105. The regulations also require a public entity, within six months of January 26, 1992, to adopt a "transition plan" with a schedule for providing curb ramps. 28 C.F.R. § 35.150(d).

Those regulations do not, however, create a right of action against the City for failure to maintain policies and procedures designed to ensure compliance with the ADA. First, Plaintiffs have not made a claim under either of these sections, and the Court does not read their complaint as challenging the City's schedule for curb ramp installation. Neither side has even made reference to the City's transition plan in the pleadings and briefs. Rather, Plaintiffs are complaining about the *execution of the curb ramp installations*. Second, even if Plaintiffs had made such a claim, there is no private right of action to enforce the self-evaluation and transition plan requirements set forth in the regulations accompanying Title II. *Matthews v. Jefferson*, 29 F.Supp.2d 525, 539–40 (W.D.Ark.1998). Any failure on the part of Defendants to comply with the self-evaluation and transition plan requirements is relevant to this case only to the extent that Plaintiffs are able to demonstrate that such failure bears a causal connection to their claims of discrimination. *See Id.* at 540; *Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach*, 884 F.Supp. 487, 490 (S.D.Fla. 1994). Finally, even if such a cause of action were available in theory, since approximately 92% of the identified ADA violations occurred incident to sidewalk replacement or street resurfacing, rather than as part of the City's ongoing curb ramp installation process, those regulations have limited factual relevance to the case at bar.

It is certainly within the realm of possibility that the Court, at the end of this case, will enter a prophylactic injunction requiring the City to establish such policies and procedures. But Plaintiffs have presented nothing that would indicate to this Court that the City's failure to have policies and procedures designed to ensure compliance with the ADA could constitute a violation of ADA for which they are entitled to redress. Therefore, Plaintiffs' motion for summary judgment on the issue of whether the City had sufficient policies and procedures designed to ensure compliance with the ADA must be denied.

### D. Appropriateness of Granting Injunctive Relief

The final issue before the Court on Plaintiffs' motion for summary judgment is whether it is appropriate to grant the relief requested by Plaintiffs on summary judgment. Plaintiffs have requested remedies that include virtually the entire known universe of types of permanent injunctive relief. They have requested a reparative injunction ordering the City to bring all curb ramps that have been installed since the effective date of ADA into compliance with the ADA. They have requested a preventive injunction ordering the City to refrain from any further violations of the ADA. They have requested a prophylactic injunction ordering the City to establish and implement an effective plan to ensure compliance with the ADA. And they have requested a number of reporting and inspection requirements that are reminiscent of structural injunctions: specifically, they want the City to (1) identify all intersections where sidewalks have been reconstructed or streets resurfaced since 1992, (2) inspect and report to Plaintiffs the precise location of all ramps that fail to conform to the ADAAG or where ramps are absent, and (3) submit periodic reports to Plaintiffs detailing progress in identifying and correcting the defective ramps.

■ It is clear that the entry of a mandatory injunction requiring the City to bring itself into compliance with the ADA will be proper at some point in this case. The Court finds that issuance of such an injunction at this juncture, on a motion for summary judgment, would be premature, however. Further discovery is needed to identify all intersections and streets where sidewalks have been reconstructed or streets resurfaced since May 6, 1996, and the extent to which curb ramps installed at those locations comply with the ADA. Further evidence must be taken on the extent to which the City has adopted policies and procedures aimed at ensuring compliance with the ADA. Further evidence must be taken to determine a schedule for replacing existing ramps or installing ramps where none exist. Therefore, no injunction will be entered at this time.

#### ADDITIONAL MATTERS

The Court desires to have at least a preliminary injunction entered sufficiently in advance of the beginning of the 2000 construction season to permit the City to make the highest-priority repairs during that season. With that in mind, either a partial consent decree should be entered or an evidentiary hearing should be held early enough that the Court may rule no later than March of 2000.

A telephone status conference to schedule discovery and motions deadlines is set for December 20, 1999 at 1:45 p.m. . Dates will be set with the goal of completing all procedures early enough that a preliminary injunction may be entered prior to the beginning of the 2000 construction season. The Court is aware that an expedited discovery schedule may not permit the parties to complete all of the discovery they may need before a permanent injunction is entered; however, it should be sufficient to permit the entry of a preliminary injunction covering the 2000 construction season.

IT IS SO ORDERED.