The **ABILITY CENTER OF GREATER TOLEDO, et al., Plaintiffs,**

v.

The **CITY OF SANDUSKY, et al., Defendant.**

No. 3:99CV7555.

United States District Court, N.D. Ohio, Western Division.

Feb. 16, 2001.

Thomas J. Zraik, Sylvania, OH, for plaintiffs.

William P. Lang, Avon Lake, OH, for defendants.

## ORDER

CARR, District Judge.

Plaintiffs the Ability Center of Greater Toledo ("ACT ") and individuals with mobility impairments seek injunctive relief alleging that defendant City of Sandusky ("City") failed to install curb ramps on sidewalks as required by the Americans with Disabilities Act ("ADA"). Plaintiffs also allege that the City failed to develop and implement a transition plan for the installation of curb cuts as required by the ADA. Jurisdiction arises under 28 U.S.C. § 1331. Pending are the City's motion for summary judgment (Doc. 20) and plaintiffs' cross-motion for summary judgment. (Doc. 21). For the following reasons, plaintiffs' motion shall be granted in part and denied in part and the City's motion shall be denied in part and granted in part.

## BACKGROUND

ACT is a non-profit organization providing direct services for persons with disabilities in Northwest Ohio. (Compl. at 5). Plaintiffs Cora Lee Bosworth, Mary Butler, and Shona Eakin are persons with a disability as defined by the ADA. They have mobility impairments and use motorized wheelchairs for ambulation. (Id. at 6, 7 and 8). Each travels within Sandusky to conduct business and for other daily activities. (Id.).

Plaintiff Woody Osburn is a person with a disability as defined under the ADA, has a mobility impairment and frequently travels to Sandusky to conduct business as the Executive Director of the Ohio State Independent Living Center. (Id. at 9). Plaintiff Tracy Justesen is mobility impaired and travels to Sandusky as the chief executive officer of ACT. (Id. at 10).

Plaintiffs allege that they have traveled on several walkways of the City which are inaccessible or unsafe for people who use wheelchairs or motorized scooters, because there are no curb cuts and ramps, or because curb cuts and ramps have been improperly installed. (Id. at 21).

Specifically, plaintiffs allege that the following street corners do not have curb ramps: Neil and Franklin streets; the corner of McKelvey and Milan; the north side of Cleveland Road at the intersections of Buckingham and Marlboro; the south side of Fifth Street at the corner of Wildman Street; the intersection of Cleveland Road and Farwell Street; the north side of Fifth Street to Marlboro and Buckingham streets; the intersections of Meigs and Adams, Dutch, East Market, Monroe, Curran, and Washington Street; the corners of Water and Shoreline Drive, Columbus, Lawrence, Fulton, Decatur, Hancock, and Jackson; and several other named intersections and crossways. (Id. at 23–42,44–5).

Plaintiffs also allege that many other curb cuts and ramps have been improperly

installed within the last two years: the intersection of Ging and Bell; the cross-walk in the middle of the block on Ging Street; the intersection of Sycamore and Neil; the corner of Wayne and Lane; the intersection of Townsend and Ging; the intersection of Stone and Polk; the corner of Polk and Lindsley; the intersection of Polk and Campbell; and the intersection of Polk and Camp. (*Id.* at 42).

Finally, plaintiffs allege that other intersections in the City, which have not been altered or repaired since the effective date of the ADA, do not have curb cuts and ramps, including the intersections of: Madison and Shelby, Carr and Monroe, Camp and Monroe, Park and West, Market and Shelby, Jefferson and McDonough, and several other named intersections. (*Id.* at 43–4).

## ANALYSIS

■ Title II of the ADA provides that an individual with a disability should not be excluded from participation or be denied the benefits of the services, programs or activities of a public entity. 42 U.S.C. § 12101 et seq.

■ During the enactment of the ADA, Congress expressed concern for the difficulties presented to disabled individuals by physical barriers. As a result, Congress specifically required local and state governments to provide curb cuts on public streets. H. Rep. No. 485, pt. 2 at 84 (1990); *Deck v. City of Toledo,* 76 F.Supp.2d 816, 818 (N.D.Ohio 1999).

Congress directed the Department of Justice to implement the ADA standards. The Department of Justice issued regulations for the accessibility of facilities. 28 C.F.R. §§ 35.150–1.

Regulation 28 C.F.R. § 35.150 governs facilities existing before January 26, 1992. Under the regulation, a public entity should make each "service, program or activity, when viewed in its entirety ... readily accessible to and usable to individuals with disabilities." A public entity

may comply with the regulation by a number of methods, such as redesigning equipment, reassigning services, and altering facilities. 28 C.F.R. § 35.150(b). A public entity is not, however, "required to make structural changes in existing facilities where other methods are effective in achieving compliance with th[e] section." *Id.*

The regulation also demands that each public entity formulate a transition plan to implement needed accessibility changes for existing facilities. 28 C.F.R. § 35.150(d). By August 26, 1992, the public entity was required to develop a plan: 1) identifying physical obstacles in facilities limiting accessibility; 2) providing curb ramps for pedestrian walks cross curbs, giving priority to walkways serving entities such as government offices and facilities; 3) describing the methods used to make the facilities accessible; 4) specifying the schedule for taking the steps necessary to achieve compliance; and 5) indicating the official responsible for implementation of the plan. *Id.*

After January 26, 1992, public entities that construct new facilities or alter facilities must take greater steps to assure accessibility. 28 C.F.R. § 35.151. The regulations demand that each facility, to the maximum extent feasible, be readily accessible by individuals with disabilities. Furthermore, newly constructed or altered streets and pedestrian walkways "must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway." *Id.* at (e).

### A. Curb Ramps on Installed or Altered Streets and Pedestrian Walkways

■ Plaintiffs allege that the City failed to install or properly install curb cuts and ramps when resurfacing streets and altering or installing city sidewalks in violation of the ADA. I agree.

After January 26, 1992, the City *must* install curb cuts in sidewalks and pedestri-

an walkways to the maximum extent feasible when repairing or altering sidewalks and pedestrian walkways. 28 C.F.R. § 35.151(b).

■ The City argues that the regulations do not demand "strict compliance" as long as the facilities "when viewed in their entirety" are made accessible. (Doc. 45 at 2). The City, however, confuses the regulations for existing and new facilities. While the regulations for existing facilities allow compliance "when viewed in their entirety", the standard for new or altered streets is more stringent. (*Id.* at Ex. 2, pg. 2).

The City admits that "some of the ramps do not meet certain criteria set forth in the regulations...." (Doc. 45 at 2). The City, however, argues that it is nonetheless compliant with the regulations because other ramps are accessible at a slight inconvenience to the user and because strict compliance is "infeasible." (*Id.* at 3). I find both arguments to be without merit.

First, the regulations mandate that curb cuts must be installed when repairing or altering all sidewalks and pedestrian walkways. 28 C.F.R. § 35.151. The City's argument that it is compliant because nearby ramps are available at the intersections at issue is, therefore, unavailing.

Next, the City argues that some of the curb cuts were installed at one and a half inches (instead of 1:12 under the ADA) to prevent the formation of ice. Kathryn McKillips, a project engineer for the City, stated that "lips", or a curb height of one and a half inches, was necessary to allow water to drain away from the sidewalk to prevent a slick surface during the winter months. (Doc. 46). McKillips stated that the ADA guidelines do not take into account local winter conditions in the City, and that the curb heights demanded would be infeasible. (*Id.*).

The regulations unequivocally state that transitions between the street and curb "shall be flush and free of abrupt changes." ADAAG § 4.7.2; Doc. 20 at Ex. A. The maximum slope of a ramp in new construction is 1:12. ADAAG § 4.8.2. There are no exceptions allowed to these requirements. *Id.*

I find that placing "lips" on the City sidewalks to prevent ice formation does not fall under the infeasibility exception. The City alleges that the curb cuts are not required because it has determined that the sidewalk should be raised to prevent slick conditions. The ADA regulations, however, do not permit such policy decisions by the public entity.

Finally, the City argues that the curb cuts are infeasible because the "boulevard area is very short" at the disputed intersections. Without more, this conclusory statement does not demonstrate how the curb cut cannot be installed. I find that the City has failed to establish a genuine issue of material fact that the failure to install curb cuts on sidewalks and pedestrian walkways after January 26, 1992 was based on infeasibility rather than a misunderstanding of the ADA requirements.

Plaintiffs have provided an extensive list of intersections and walkways that fail to meet the ADA height requirements for curb cuts. The ADA requirements apply to streets constructed or altered after January 26, 1992. As the plaintiffs requested, a hearing before the Court would be an appropriate mechanism for the limited purpose of determining the dates of construction or alteration of streets and the instances of noncompliance for the curb cuts and ramps.

**B. The City's Failure to Implement a Transition Plan**

■ The ADA also requires that, by August 26, 1992, a public entity must develop a transition plan: 1) identifying physical obstacles limiting accessibility in facilities; 2) providing curb ramps for pedestrian walks cross curbs, giving priority to walkways serving entities such as government offices and facilities; 3) describing the methods used to make the facilities

accessible; 4) specifying the schedule for taking the steps necessary to achieve compliance; and 5) indicating the official responsible for implementation of the plan. 28 C.F.R. § 35.150(d). The City admits that it does not have a formal, written, transition plan as required by the regulations. (Doc. 20 at 7).

Plaintiffs do not have standing to bring forth the claim. "There is no private right of action to enforce the self-evaluation and transition plan requirements set forth in the regulations accompanying Title II." *Deck v. City of Toledo,* 76 F.Supp.2d 816, 823 (N.D.Ohio 1999); *Matthews v. Jefferson,* 29 F.Supp.2d 525, 539 (W.D.Ark. 1998). While failure to comply with the transition plan requirement will certainly lead to continuing ADA violations by the City in the future, plaintiffs do not have standing to obtain relief for the City's failure to have adopted a transition plan. The City's motion for summary judgment as to this claim is granted.

### C. Compensatory and Punitive Damages

 Plaintiffs also seek compensatory and punitive damages for the City's failure to install curb cuts. (Compl. at 19). The remedial section of Title II of the ADA incorporates by reference the remedies of the Rehabilitation Act. 42 U.S.C. '§ 12133. The Rehabilitation Act, in turn, incorporates the remedies, procedures, and rights provisions of Title VI of the Civil Rights Act of 1964. 42 U.S.C. § 2000d. *Johnson v. City of Saline,* 151 F.3d 564, 573 (6th Cir.1998). Under these acts, compensatory and punitive damages are available only on a showing of intentional discrimination by the defendant. *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 533–4, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). Plaintiffs have not established that the City failed to implement the policies based on an intent to discriminate against them as disabled individuals. The City's motion is, therefore, granted as to this claim.

### CONCLUSION

For the following reasons,

1. Plaintiff's motion (Doc. 21) is granted in part and denied in part, and the City's motion (Doc. 20) is granted in part and denied in part.

2. Telephone scheduling conference is set for February 26, 2001 at 2:30 p.m.

So ordered.