John PANNELL, et al., Plaintiffs,

v.

CITY OF BELLVUE, et al., Defendants.

No. 3:01CV7018.

United States District Court, N.D. Ohio, Western Division.

Jan. 2, 2002.

K. Ronald Bailey, Sr., Law Office of K. Ronald Bailey, Sandusky, OH, for Plaintiffs.

Stephen F. Ahern, Manahan, Pietrykowski, Bamman & DeLaney, Joseph J. Allotta, Allotta & Farley, Marilyn L. Widman, Allotta & Farley, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights case arising from the arrest of the plaintiff John Pannell. He claims that the arresting officers used excessive force in executing the arrest and that they violated the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. Plaintiffs also allege pendent state law claims.

Pending is the defendants' motion for summary judgment. For the reasons that follow, the motion shall be granted.

On January 16, 2000, Tawna Patrick, a twelve year old child, called the Bellvue Police Department seeking assistance after her older brother, Dustin, had struck her during a domestic altercation involving Dustin and the children's mother, Tamra Patrick. Tawna feared that Dustin was about to harm their mother.

Defendant officers Johnson and Mapus were sent to the scene. While they were en route, Tamra again spoke with the police dispatcher. She told the dispatcher that Dustin had returned to the apartment and calmed down. But she did not tell the dispatcher to let the officers know that there was no longer a need for them to respond.

When the officers arrived, Officer Johnson knocked on the door. Plaintiff John Pannell, who is Tamra's father (and grandfather of Tawna and Dustin), partially opened the door. The officers could see that he was holding a baseball bat in his left hand.

The officers told plaintiff to put the bat down. He did not do so immediately; after repeatedly being told to do so, he put the bat down, though it remained within his reach.

The officers then told plaintiff to open the door; he did not do so. Finally, he slammed the door into Officer Johnson. He and Officer Mapus entered, and placed the plaintiff under arrest after a brief struggle. The officers then took plaintiff to their squad car.

█ Plaintiff Pannell is a stroke victim, whose ability to ambulate and communicate are affected by that fact. According to the plaintiffs, the configuration of the entrance to the apartment is such that it is necessary for a person standing behind the door, as plaintiff was doing, to close the door in order to be able to step aside and open the door.

Plaintiffs contend that the officers, while they were ordering the plaintiff to put the

baseball bat down and open the door, were notified by yelling and shouting that plaintiff was a stroke victim, could not respond in a normal manner to their commands, and had to close the door in order to be able to open it.

After the plaintiff arrived at the Bellvue police station, scrapes on his arm were observed. An EMS unit was called, and plaintiff was taken to the hospital, where he was treated for the scrapes without being admitted to the hospital.

There is insufficient evidence in this record to show that the officers used excessive force when they arrested the plaintiff. Their encounter with him was brief, and the circumstances were confused and confusing. They had been told to report to the scene of an apparent domestic disturbance. On arriving, they encountered an adult holding a baseball bat and barring their entry to the apartment. There was a lot of shouting and yelling. The plaintiff failed to respond promptly to the officers' demands to put down the baseball bat and open the door.

Under those circumstances, the officers were justified in taking the plaintiff into custody, and to use the force that they did to take control of the plaintiff. No firearms, batons, or other weapons were drawn or used. There is no allegation that the officers punched, kicked, or otherwise assaulted the plaintiff. There is a generalized allegation that they dragged him to their vehicle; but there is no indication that they did so intentionally, or with reckless or deliberate indifference to his well-being. The injuries suffered by plaintiff were minor and treated promptly.

In any event, even if excessive force was used, in view of the plaintiff's impaired condition, the officers are entitled to qualified immunity. Even if they should have understood in the heat of the moment what others in the apartment were trying to tell them when they were yelling at them, there is no basis in the record that they either knew or reasonably should have known that their arrest of the plaintiff and the manner in which it was effectuated violated his Fourth Amendment right to be seized only by application of reasonable force.

There is no reason to believe that the officers understood that the plaintiff was impaired as a result of a stroke or that he had to close the door in order to open it. In a less chaotic setting, they might have been expected to comprehend what they were being told about his condition and the circumstances. From their viewpoint, however, they ascertained that an adult at a scene of a reported domestic disturbance had a baseball bat, which he initially refused to drop, and then had slammed the door into one of the officers.

Under these circumstances, the officers cannot be held to have acted with an awareness that their actions violated the plaintiff's constitutional or other rights, or that they should have had such awareness. They are, accordingly, entitled to official immunity. *See generally Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The defendant police chief and city are also entitled to summary judgment because both have been sued on the basis of vicarious or derivative liability, rather than on the basis of direct action or conduct on their part. There is no showing that the chief was personally involved, so he cannot be held liable. *See generally Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). There is likewise no showing that the officers were fulfilling a municipal policy favoring the infliction of excessive force when they arrested the plaintiff, so the city cannot be held liable. *See generally Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The defendants seek, and are entitled to summary judgment with regard to the ADA claims on the basis that individuals who are not employers cannot be held liable under that statute. *Hiler v. Brown,* 177 F.3d 542, 545–46 (6th Cir.1999). With regard to the city's alleged liability, there has been no showing that the officers intended to act as they did toward the plaintiff on the basis that he was disabled. Absent a showing that an entity has intentionally discriminated on the basis of a disability, the entity cannot be held liable. *See, e.g., Ability Center of Greater Toledo v. City of Sandusky,* 133 F.Supp.2d 589, 593 (N.D.Ohio 2001).

### Conclusion

For the foregoing reasons, the defendants are entitled to summary judgment as to plaintiffs' federal claims. Plaintiffs' state law claims shall be dismissed, without prejudice, on the basis that I decline to exercise supplemental jurisdiction over those claims following dismissal of the federal claims.

It is, therefore,

ORDERED THAT the defendants' motion for summary judgment be, and the same hereby is granted with respect to plaintiffs' federal claims; state claims dismissed without prejudice.

So ordered.