**James ROSS, Marcella Broglin, and Jim Kidwell, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CITY OF GATLINBURG, TENNESSEE, Defendant.**

No.  3:02–CV–707.

United States District Court, E.D. Tennessee, Northern Division.

July 8, 2003.

J. Todd Faulkner, Butler, Kohl & Faulkner, K. Cody Allison, Joe Dughman & Associates, Nashville, TN, for Plaintiffs.

Nathan D. Rowell, Watson & Hollow, PLC, Robert H. Watson, Jr, Watson & Hollow, PLC, Knoxville, TN, for City of Gatlinburg.

## *MEMORANDUM OPINION*

VARLAN, District Judge.

Plaintiffs James Ross, Marcella Broglin, and Jim Kidwell bring this action for declaratory judgment and injunctive relief against defendant City of Gatlinburg, Tennessee (the "City"). Plaintiffs claim violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, for discrimination against individuals with disabilities by a public entity in providing equal access to facilities, services, policies and practices. [Doc. 1, Complaint ¶ 1.]

This matter is before the Court on the following motions: Plaintiffs' Motion for Class Certification [Doc. 5], and defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment [Doc. 13]. These motions have been thoroughly briefed by the parties [Docs. 6, 12, 14, 20] and are ripe for determination. The Court has carefully considered the pleadings filed by the parties, as well as the arguments of counsel at the motion hearing on June 19, 2003. For the reasons set forth herein, the Court will **GRANT** defendant's motion for summary judgment. Plaintiffs' motion for class certification will therefore be **DENIED** as moot.

## I. *Facts*

Defendant has styled its motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12, or alternatively as a motion for summary judgment under Fed.R.Civ.P. 56. Because the parties have presented material outside the pleadings for consideration on this motion, the Court will treat the motion as a motion for summary judgment. *See* Fed.R.Civ.P.12(b). As the Court is obliged to do in reviewing a motion for summary judgment, the facts of this case will be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The facts as developed at this stage are those set forth in the Complaint [Doc. 1] and the plaintiffs' affidavits. [Doc. 18, Exs. 2, 3, 4.] The Complaint is sub-divided into three "counts"—(1) Existing Structures, Policies, and Procedures [Doc. 1, ¶¶ 8–44]; (2) New Construction and Alteration [¶¶ 45–58]; and (3) Failure to Make Reasonable Modifications in Policies and Procedures [¶¶ 59–67].[1] Despite this demarcation, the allegations of all three counts relate to plaintiffs' ADA and Rehabilitation Act claims. Further, the factual subjects of plaintiffs' claims are addressed in all three counts. The Court will attempt to separate the factual allegations from legal argument, again viewing the facts in the light most favorable to the plaintiffs.

Plaintiffs claim that they are mobility-impaired individuals and that they are aggrieved by various deficiencies in services provided by the City, such as lack of accessible parking; lack of accessible bathrooms; failure to keep sidewalks clear; inadequate grievance procedure for violations; failure to provide program access; inadequate transition plan for City; path of travel barriers to and/or within some of defendant's facilities; and lack of curb cuts at some intersections. [Doc. 1, Complaint ¶ 1.]

Plaintiff James Ross is a resident of Halls, Tennessee, who has visited the City

---

1. The count entitled "Failure to Make Reasonable Modifications in Policies and Procedures" is styled as "Count II"; however, it is the second "Count II" in the Complaint and the Court will therefore refer to it as Count III for clarity.

of Gatlinburg.[2] [Doc. 18, Ross Aff. ¶¶ 1–3.] Ross suffers from periffial vascular disease and has lost both legs. *Id.* at ¶ 2. Ross is confined to a wheelchair and claims that, during his visit to the City, he encountered "difficulties such as finding handicapped parking, specifically Van Accessible spaces." *Id.* at ¶ 3. Ross also states he "had difficulty managing the sidewalks with curb cuts partially blocked" which "made it difficult to enter and exits sidewalks." *Id.* Ross contacted the City's Chamber of Commerce for assistance with accommodations and was advised they could not help him. *Id.* at ¶ 4. Ross would like to visit the City again and would like the City to improve accessibility with handicap parking and sidewalks. *Id.* at ¶ 5.

Plaintiff Marcella Broglin is also a resident of Halls, Tennessee, who has visited the City "recently" and "many times on vacations." [Doc. 18, Broglin Aff. ¶¶ 1, 3, 5.] Broglin suffers from arthritis, congestive heart failure and very high blood pressure and uses "various walking assistance devices to get around." *Id.* at ¶ 2. She is limited in the distance she can walk due to her health problems. *Id.* at ¶ 3. Broglin states that she "had problems with handicap parking spaces and the one [sic] I could find were not close to the main tourist area" during a recent visit to the City. *Id.* at ¶ 3. Broglin also states that the City's "sidewalks were narrow and curb cuts [sic] outs were blocked in some places making it hard to maneuver around the city." *Id.* at ¶ 4. Broglin states that she

would like to visit the City in the future, but she would like to see the City improve its handicap accessibility. *Id.* at ¶ 5.

Plaintiff Jim Kidwell is a resident of Watertown, Tennessee, who visits the City "on an annual basis during the Fall season and some years in the summertime." [Doc. 18, Kidwell Aff. ¶¶ 1,3.] Kidwell is permanently confined to a wheelchair due to an L1 level spinal injury and has "difficulty navigating the City due to various problems with sidewalks, curb cuts, city owned public restrooms, and parking." *Id.* at ¶¶ 2–3. Kidwell claims that these issues have existed at the City "for sometime" and that he has not seen any changes. *Id.* at ¶ 3. Kidwell has corresponded with Cindy Ogle, City Manager, concerning issues of accessibility in the City as well as commercial concerns. *Id.* at ¶ 4. Kidwell has spoken to the City's Mass Transit Director regarding ADA issue with the mass transit system. *Id.* at ¶ 5. Kidwell has also spoken to the City by telephone on at least one other occasion regarding problems with the City's sidewalks, curb cuts, parking, buildings, and ADA compliance in general. *Id.* at ¶ 6. Kidwell states that he "was never informed by anyone with the City that they had an ADA coordinator or that a grievance procedure existed." *Id.* at ¶ 7.

In further support of their opposition to defendant's motion, plaintiffs submitted a copy of a letter to Kidwell from Cindy Ogle, City Manager.[3] [Doc. 18, Ex. 6.]

---

**2.** Ross states that he "visited the City of Gatlinburg October 24 through the 27th," but does not specify the year of his visit. [Doc. 18, Ross Aff. ¶ 3.]

**3.** The Court notes that the letter from Ms. Ogle was submitted as a separate exhibit to plaintiffs' brief, rather than as an attachment to Kidwell's affidavit. While unsworn documents are not normally considered on a mo-

tion for summary judgment, the Court will consider this letter as part of Kidwell's affidavit since the substance of the affidavit refers to such correspondence. *See* Doc. 18, Kidwell Aff. ¶ 4. The Court will not, however, consider the so-called "Mission Statement for the City of Gatlinburg" submitted with plaintiffs' brief, inasmuch as it clearly does not satisfy the requirements of Fed.R.Civ.P. 56(e).

The substance of Ms. Ogle's letter to Kidwell is as follows:

> Please accept this letter as a response to your correspondence to the Mayor regarding the Americans with Disabilities Act (ADA) and Gatlinburg.
>
> As it relates to your comments regarding hotels and motels being aware of ADA requirements, this matter is basically an individual business concern. The City does require that ADA standards be met for all new construction of buildings and facilities for public use. Further, the City does require that ADA standards be met for all new construction of buildings and facilities for public use. Further, the City also requires the North Carolina State Building Code Volume 1–C, Accessibility Code, be met for all new construction of buildings and facilities for public use.
>
> Relating to existing facilities, the City is not responsible under the guidelines of the ADA for enforcement of the provisions of the ADA in privately owned facilities such as motels, restaurants or retail establishments. This enforcement is under the direction of the federal government and the court systems. While the City certainly encourages all businesses in Gatlinburg to comply with the ADA, the City does not have the ability to compel their compliance.
>
> Regarding the concerns you expressed about the City trolleys, it is my understanding that you have had a discussion with the Mass Transit Director, Mr. Buddy Parton, about this matter. As explained by Mr. Parton, all City Trolley Routes have at least one handicap vehicle on the route. The twenty four hour notice that you reference is for service outside the fixed routes. At this time, the City does have ten vehicles that are handicap equipped and we make every effort to comply with ADA regulations.

*Id.*

Defendant submitted copies of complaints filed by plaintiffs' counsel against other cities in Tennessee in which the allegations are virtually identical to those in the present case. [Doc. 14, Exs. 1, 2, 3.] Roger Trentham served as the City's ADA Coordinator from 1990 until December 2001 and states that the City employed consultants who conducted studies and self-evaluations regarding ADA compliance which totaled six volumes. [Doc. 18, Ex. 7 at ¶ 3.] Trentham also states that the City adopted a formal grievance procedure regarding its ADA compliance. *Id.* at ¶ 4. The City's Rule 26(a)(1) Disclosures, attached to plaintiffs' brief, state that the City's Title II Survey is available for inspection and copying at the offices of the City's attorneys. [Doc. 18, Ex. 1 at p. 2.]

## II. *Standard of Review*

Under Fed.R.Civ.P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Burchett v. Kiefer,* 310 F.3d 937, 942 (6th Cir.2002).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp.,* 477

U.S. at 323, 106 S.Ct. 2548. To defeat summary judgment, the nonmoving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment requires the non-moving party to "put up or shut up" on a critical issue. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). Conclusory allegations are insufficient to defeat a wellfounded summary judgment motion. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("the object of this provision [Rule 56(c)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit"). The Court cannot weigh the evidence or determine the truth of any factual issues in dispute. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Instead, the Court's role under Rule 56 is limited to determining whether the record contains sufficient proof from which a rational factfinder could reasonably find for the non-moving party. *Id.* at 248–49, 106 S.Ct. 2505.

### III. *The Parties' Arguments on Summary Judgment*

Defendant cites two bases for its motion for summary judgment: (1) plaintiffs lack standing to bring this action inasmuch as they have not alleged any specific injury; and (2) plaintiffs cannot bring a private cause of action for failure to develop or implement a self-evaluation or transition plan under the ADA. [Docs. 13, 14, 20.]

On the issue of standing, defendant argues that plaintiffs must demonstrate they have been excluded from a public benefit, service or program because of their disabilities. In short, defendant argues that plaintiffs have not alleged an injury in fact, or in the context of the ADA, a claim of discrimination, and they therefore do not have standing as required by Article III of the Constitution. Defendant argues that plaintiffs cannot require the City to prove its compliance with the ADA without first showing that the City does not comply. On the second issue, defendant argues that, although the ADA regulations require the City to develop and implement an appropriate self-evaluation and transition plan, the ADA does not provide for a private right of action to enforce the City's failure to do so.

Plaintiffs argue that they have alleged sufficient facts to establish standing. [Docs. 17, 18.] Plaintiffs assert that they are qualified individuals with disabilities as required by the ADA. They also argue that the allegations in the Complaint regarding access barriers within the City are sufficient to satisfy the requirements of Article III standing.[4] They point out that the City promotes itself as a tourist destination and that they would like to visit the City in the future. Plaintiffs further argue that defendant has failed to produce a copy of their transition plan[5] and that material facts remain in dispute as to the City's compliance with the ADA. Plaintiffs also argue that they can bring a private action to challenge the lack of a transition plan.

---

4. Counsel for the plaintiffs argued at the motion hearing on June 19, 2003, that they had proof of at least one parking lot in the City which did not comply with the ADA and that they also had pictures and documentation of other accessibility shortcomings by the City. However, no such evidence is contained in the record and statements by counsel cannot be considered as proof under Rule 56.

5. This particular allegation appears to be unfounded inasmuch as the attorneys for the City have stated in the City's Rule 26(a)(1) Disclosures that the City's transition plan is available for inspection and copying. [*See* Doc. 18, Ex. 1.] The Court expresses no opinion, however, as to whether the documents produced by the City meet the requirements of the ADA.

## IV. *Analysis*

Title II of the ADA generally prohibits discrimination against qualified individuals with a disability in the provision of public services. Similarly, the Rehabilitation Act prohibits a program or activity that receives federal funds from discriminating against qualified individuals with a disability.[6] Thus, the initial analysis of plaintiffs' claim is for the Court to determine whether the plaintiffs are covered persons under the statutes. A "qualified individual with a disability" is defined by the ADA as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A "disability" is defined as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2). A physical or mental impairment includes any physiological disorder or condition affecting the neurological or musculoskeletal body systems. 28 C.F.R. § 35.104. The phrase "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning. 28 C.F.R. § 35.104.

■ The parties did not carefully address this initial ADA inquiry, although the City initially challenged whether the plaintiffs could satisfy this threshold requirement. The affidavits submitted by the plaintiffs state that they are all mobility-impaired individuals with various physical impairments. Based on the representations that they are all restricted to the use of wheelchairs or other mobility devices, the Court will assume for the purposes of summary judgment that the plaintiffs' respective impairments substantially limit their ability to walk. Thus, it appears that the plaintiffs have presented sufficient evidence at the summary judgment stage to demonstrate that they are qualified individuals under the ADA.

Once the plaintiffs have surpassed the initial hurdle, however, they must still show that they have suffered discrimination from the City because of their disabilities. Specifically, Title II states:

> ... no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.[7] Although it is difficult to discern, the Court interprets the

---

6. The Court notes that neither party addressed the substance of the Rehabilitation Act or whether the plaintiffs are qualified individuals under that statute. The Court will analyze plaintiffs' status as "qualified individuals" under the Rehabilitation Act concurrently with its analysis under the ADA. *See Mahon v. Crowell*, 295 F.3d 585, 588–89 (6th Cir.2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir.1997). The Court's subsequent discussion on standing, of course, is applicable to both claims.

7. Plaintiffs agree that they claim a violation of Title II of the ADA, although their Complaint references Title III. *See* Doc. 1 at ¶ 51. Title III of the ADA does not apply to the City because it is a public entity. Rather, Title III governs disability discrimination in public accommodations and services operated by private entities. 42 U.S.C. §§ 12181–12189. *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir.1995). Thus, to the extent that plaintiffs' Complaint sets forth a claim under Title III of the ADA, the City's motion for summary judgment on such claim is **GRANTED** and it is **DISMISSED** with prejudice.

plaintiffs' allegations as set forth in the Complaint and in their affidavits as they have encountered difficulty in parking and getting around in the City. Plaintiffs allege that accessible parking, accessible sidewalks, and curb cuts are services of the City within the meaning of Title II.

### A. *Standing*

The City has moved for summary judgment on the basis that plaintiffs cannot establish standing because they have not shown any injury in fact as required by Article III. The Court agrees.

■ Article III, Section 2 of the United States Constitution confines the jurisdiction of federal courts to the resolution of actual "cases" and "controversies." *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *Arizonans For Official English v. Arizona,* 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *National Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997). The case or controversy limitation of Article III requires that a party invoking federal jurisdiction has standing—that is a personal stake in the outcome. *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *Raines,* 521 U.S. at 818, 117 S.Ct. 2312; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ Standing is the threshold question in every case in federal court. *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 832 (6th Cir.2001); *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys.,* 249 F.3d 450, 456 (6th Cir.2001); *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999). Plaintiffs have the burden of showing that they have standing. *Raines,* 521 U.S. at 818–19, 117 S.Ct. 2312; *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct.

2431, 132 L.Ed.2d 635 (1995); *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Coyne,* 183 F.3d at 494. Plaintiffs must establish they had standing at the time the suit was filed with the Court. *Lujan,* 504 U.S. at 569 n. 4, 112 S.Ct. 2130; *Cleveland Branch, N.A.A.C.P. v. City of Parma,* 263 F.3d 513, 524 (6th Cir.2001).

■ In order to satisfy the standing requirement, a plaintiff must show three elements. First, there must be an injury in fact—a harm or invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not merely conjectural or hypothetical. A plaintiff is required to establish a personal stake in the dispute which means the injury must affect the plaintiff in a personal and individual way. The second element of standing is causation, that is, there must be a causal connection between the alleged injury and the defendant's conduct. The plaintiff's injury has to be "fairly traceable" to the challenged conduct or act of the defendant and not the result of the independent actions of some third party not before the Court. The third element of standing is that it must be likely, as opposed to merely speculative, that the plaintiff's alleged injury will be redressed by a favorable judicial decision. *Vermont Agency of Natural Resources,* 529 U.S. at 771, 120 S.Ct. 1858; *Raines,* 521 U.S. at 819, 117 S.Ct. 2312; *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville,* 274 F.3d 377, 389 (6th Cir.2001); *Cleveland Branch, N.A.A.C.P.,* 263 F.3d at 523–24; *Coyne,* 183 F.3d at 494.

■ The issue of standing focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Simon v. Eastern Ky. Wel-*

*fare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (emphasis in original). In other words, the party invoking federal jurisdiction must show that he has personally suffered from an actual injury or is in immediate danger of sustaining some direct injury in fact as a result of the allegedly illegal conduct of the defendant. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). A plaintiff must assert his or her own personal legal rights and interests and cannot rest on the legal rights and interests of third parties. *Warth,* 422 U.S. at 499, 95 S.Ct. 2197; *Norton v. Ashcroft,* 298 F.3d 547, 555 (6th Cir.2002); *Coal Operators & Assoc., Inc. v. Babbitt,* 291 F.3d 912, 916–17 (6th Cir.2002); *Internat'l Union v. Dana Corp.,* 278 F.3d 548, 559 (6th Cir. 2002); *Allstate Ins. Co.,* 249 F.3d at 456–57; *Coyne,* 183 F.3d at 494.

■ Plaintiffs can meet the standing requirement by establishing an actual present harm or a significant possibility of future harm, even though the injury in fact has not yet been completed. *Blakely v. United States,* 276 F.3d 853, 873 (6th Cir. 2002); *Grendell,* 252 F.3d at 832; *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir.1998); *National Rifle Ass'n,* 132 F.3d at 280.

■ The Court concludes that the plaintiffs have not met their burden of showing they have standing. Plaintiffs have not established that they have suffered an injury in fact, the first element of standing. Indeed, they have failed to present any proof of harm in violation of Title II of the ADA that is concrete and particularized, and actual or imminent. They allege "difficulty" and "problems" with parking and navigating the City streets. They do not, however, even in the face of a motion for summary judgment, specify any particular street, sidewalk, intersection, parking lot, public building or facility that does not comply with the ADA. They do not specify how they have been excluded from participation in or denied the benefits of a service, program or activity of the City in violation of Title II. Without satisfying the first element of standing, an injury in fact, the plaintiffs necessarily cannot satisfy the second and third elements of standing.

In this regard, the Court notes the recent decision by Chief Judge Edgar in *Access Now, Inc., et al. v. Town of Jasper,* No. 1:02–cv–059 (E.D. Tenn. June 10, 2003), as it relates to the issue of standing. In response to a challenge on standing, the plaintiffs relied on general allegations in the complaint and contentions by their attorneys. Judge Edgar concluded such response was insufficient to defeat a motion for summary judgment. "[P]laintiffs have not presented any proof under Rule 56 to show there is a genuine issue of material fact in dispute whether [plaintiff] has suffered an injury in fact. There is no evidence establishing actual present harm or a significant possibility of imminent future harm. . . ." *Id.* at pp. 19–20. Likewise, the present plaintiffs have presented no evidence of an actual present harm or the significant possibility of imminent future harm.

■ As previously noted, plaintiffs have responded to the summary judgment motion with general allegations in the complaint and their affidavits, along with the arguments of counsel which are not acceptable proof under Rule 56. Plaintiffs point to the notice pleading requirement of Fed. R.Civ.P. 8, and argue that their Complaint is sufficient to satisfy the notice pleading standard. [*See* Doc. 18, at p. 3.] Mere notice pleading, however, is insufficient to defeat a well-pled summary judgment motion. *See Garside v. Osco Drug, Inc.,* 895

F.2d 46, 50 (1st Cir.1990); *Vidrine v. Enger*, 752 F.2d 107, 110 (5th Cir.1984) ("while notice pleading is sufficient to open the federal courthouse door, a party opposing a motion for summary judgment, properly put, may not ask the court to try the case in order to determine the facts but must set forth by affidavit or deposition specific facts that would justify judgment in his favor if proved."). The standard at summary judgment requires the plaintiffs to come forward with evidence which could support a verdict in their favor. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Plaintiffs have not met this standard.

The Court's conclusion is reinforced when this case is compared with others in which the plaintiffs have stated a claim under Title II. *See, e.g., Ability Center of Greater Toledo v. City of Sandusky*, 133 F.Supp.2d 589 (N.D.Ohio 2001); *Deck v. City of Toledo*, 76 F.Supp.2d 816 (N.D.Ohio 1999); *Matthews v. Jefferson*, 29 F.Supp.2d 525 (W.D.Ark.1998). In each of these cases, plaintiffs set forth detailed, specific itemizations of non-compliant buildings, facilities, and street corners. *See Ability Center of Greater Toledo*, 133 F.Supp.2d at 590–91; *Deck*, 76 F.Supp.2d at 819–822 ("Plaintiffs have documented at least 302 separate locations in which the City has violated the ADAAG regulations for curb ramps"); and *Matthews*, 29 F.Supp.2d at 528–29. In the present case, the plaintiffs have failed to document even one building, facility, sidewalk, parking lot or intersection which is inaccessible. The absence of such evidence, in response to a motion for summary judgment, compels the Court to conclude that the plaintiffs have not established an injury in fact and do not have standing.

This Court cannot rely on vague assertions and allegations of what defendant "may" or "may not" have done on the question of standing. Standing goes directly to this Court's jurisdiction. In the absence of any proof to the contrary, the Court can only conclude that the plaintiffs have not shown an injury in fact. The Court expresses no opinion as to whether the City is in compliance with Title II of the ADA. The Court's ruling is simply based on the failure of these plaintiffs to present sufficient evidence of standing in the face of a motion for summary judgment. The City's motion for summary judgment is **GRANTED.**

### B. *Enforcement of Self–Evaluation and Transition Plan*

The City also argues that plaintiffs cannot maintain a private cause of action on whether the City complied with the self-evaluation and transition plan requirements of the ADA regulations. The City cites several cases in support of its position: *Deck v. City of Toledo*, 76 F.Supp.2d 816, 823 (N.D.Ohio 1999); *Ability Center of Greater Toledo v. City of Sandusky*, 133 F.Supp.2d 589 (N.D.Ohio 2001); and *Matthews v. Jefferson*, 29 F.Supp.2d 525, 539 (W.D.Ark.1998). Plaintiffs cite several cases for the opposite proposition, that is, that they may bring a private action to challenge the City's failure to develop or implement a transition plan: *Matthews*, 29 F.Supp.2d at 539; *Miller v. City of Johnson City, Tennessee*, 1996 WL 406679, at *2 (E.D.Tenn.1996); *McCready v. Michigan State Bar*, 881 F.Supp. 300, 306 (W.D.Mich.1995); and *Tyler v. City of Manhattan*, 857 F.Supp. 800, 816 (D.Kan. 1994). The parties acknowledge, and the Court agrees, that there are no controlling cases on this point. The Court must therefore undertake its own analysis.

Initially, the Court notes that the text of Title II does not contain any requirements for a self-evaluation or transition plan. The regulations implementing Title II require covered entities to conduct a self-evaluation of their services, policies, and

practices that do not or may not comply with Title II. 28 C.F.R. § 35.105(a). The regulations also require some covered entities to develop a transition plan as to any structural changes to their facilities. 28 C.F.R. § 35.150(d). The question then is whether a private plaintiff may seek enforcement of these regulatory demands.

The enforcement provision of Title II provides that its remedies are available "to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133. As noted previously, section 12132 of Title II prohibits discrimination by public entities in the provision of services, programs or activities. Arguably, the enforcement provision of Title II only applies claims of discrimination by qualified individuals with a disability and does not apply to a public entities' failure to satisfy the regulatory requirements of Title II in the absence of a claim of discrimination.

■■ After reviewing the statutory language, the above-cited cases and the regulations implementing Title II, the Court agrees with the reasoning set forth in *Deck* and *Matthews*. The Court does not find any statutory basis to assert a cause of action based solely on a public entity's failure to conduct a self-evaluation or develop a proper transition plan. Such evidence must contribute to or result in discrimination as proscribed by Title II. *See Deck*, 76 F.Supp.2d at 823 ("Any failure on the part of Defendants to comply with the self-evaluation and transition plan requirements is relevant to this case only to the extent that Plaintiffs are able to demonstrate that such failure bears a causal connection to their claims of discrimination."); *Matthews*, 29 F.Supp.2d at 539-40. In the present case, the plaintiffs have presented only bare allegations of the City's failure to perform a self-evaluation or develop a transition plan. As set forth above, plaintiffs have failed to present any evidence of

an injury in fact or any instance of discrimination. Thus, even if the plaintiffs' allegations regarding the City's transition plan are correct, the plaintiffs have not shown any injury or discrimination as a result. Accordingly, these plaintiffs cannot prosecute a claim related to the City's failure to properly perform a self-evaluation or develop or implement a transition plan in the absence of any proof of injury. Defendant's motion for summary judgment is **GRANTED** on this basis as well.

### V. *Conclusion*

The plaintiffs have not met their burden of showing that they have standing. The City's motion for summary judgment is **GRANTED** and plaintiffs' claims are hereby dismissed. Because of the Court's ruling on the motion for summary judgment, plaintiffs' motion for class certification is **DENIED** as moot.