RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0079p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

Nos. 03-3465/3466

KELLY DILLERY,

　　　　　　*Plaintiff-Appellee/Cross-Appellant,*

　　v.

CITY OF SANDUSKY, et al.,

　　　　　*Defendants-Appellants/Cross-Appellees.*

No. 04-3314

KELLY DILLERY,

　　　　　　　*Plaintiff-Appellant,*

　　v.

CITY OF SANDUSKY, et al.,

　　　　　　　*Defendants-Appellees.*

Nos. 03-3465/3466; 04-3314

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-07353—David A. Katz, District Judge.

Argued: December 9, 2004

Decided and Filed: February 18, 2005

Before: MERRITT, GIBBONS, and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** William P. Lang, Avon Lake, Ohio, for Defendants. K. Ronald Bailey, K. RONALD BAILEY & ASSOCIATES, Sandusky, Ohio, for Plaintiff. **ON BRIEF:** William P. Lang, Avon Lake, Ohio, for Defendants. K. Ronald Bailey, K. RONALD BAILEY & ASSOCIATES, Sandusky, Ohio, Linda R. Van Tine, Sandusky, Ohio, for Plaintiff.

　　　GIBBONS, J., delivered the opinion of the court, in which ROGERS, J., joined. MERRITT, J. (pp. 7-8), delivered a separate opinion concurring in part and dissenting in part.

1

————————————

**OPINION**

————————————

JULIA SMITH GIBBONS, Circuit Judge. Kelly Dillery is a disabled woman who uses a wheelchair or motorized scooter to move. Dillery sued the City of Sandusky, city commissioners, and several city employees, under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, 42 U.S.C. § 1983, and various Ohio state law provisions. She alleged that Sandusky violated the ADA by failing to install proper curb cuts, such that Dillery was forced to ride her wheelchair in the street instead of on the sidewalk. Further, Dillery alleged that Sandusky police officers violated her rights by stopping her and, on several occasions, arresting her for riding her wheelchair in the street. The district court granted summary judgment to the defendants on all counts. Dillery filed a motion for reconsideration, based in part on United States District Judge James G. Carr's ruling in a separate case against Sandusky, *Ability Center of Greater Toledo v. City of Sandusky*. The district court, based on Judge Carr's ruling, granted Dillery's motion in part, but found that her claims for injunctive relief had been essentially mooted. The defendants filed a notice of appeal, and Dillery filed a notice of cross-appeal.

Dillery subsequently moved for attorneys' fees and costs. The district court denied Dillery's motion, finding that even if she was a prevailing party, she was not entitled to any fees. Dillery filed a timely notice of appeal.

For the following reasons, we affirm the decisions of the district court.

I.

Dillery is a 35-year-old woman who suffers from Fredericks Ataxia, a progressive neurological disorder. The disease is characterized by speech impairment, peculiar swaying, and irregular movements, and she must use a motorized wheelchair to move. Neither party disputes that she is disabled within the meaning of the ADA.

Dillery lives in Sandusky, Ohio. In 1975, Sandusky promulgated a policy to install curb ramps at intersections where work was being done in order to make the sidewalks handicapped accessible. Around this time, Sandusky also began a program to replace sidewalks, curbs, and gutters throughout the city. It is undisputed that Sandusky, despite undertaking this program, does not have a formal transition plan in place, as required by the ADA.

Dillery often traveled in her wheelchair on the Sandusky streets, rather than on the sidewalk, because the sidewalk curbs, the unevenness of the sidewalk, and the slope of the sidewalk could overturn her wheelchair or cause her difficulty in maneuvering. On numerous occasions, police officers stopped Dillery for traveling in the streets and directed her to move to the sidewalk. Dillery continued to use the streets, however, because she believed that they provided a more level surface for her wheelchair than many of the city sidewalks.

On June 1, 1998, Dillery was riding in her wheelchair to her bank. In order to reach her bank, Dillery crossed from the north side of Perkins Avenue to the south side and then traveled along the south side of this street, where there were no sidewalks. According to a police report, she was observed traveling in the eastbound lane of Perkins Avenue and "[n]umerous vehicles had to stop or swerve to miss striking" her. The person reporting the incident also observed that another person was sitting in Dillery's lap as she traveled this route.

Officer Tracy Brewer issued a citation to Dillery for being a pedestrian in the roadway.[1] A judge found Dillery guilty of this offense and fined her $50 when she admitted in court that she was using the street.

After this incident, Dillery continued to use her wheelchair in the street. On July 30, 1998, Dillery and her daughter went to buy school clothes at a store on Perkins Avenue. A motorist stopped at an intersection observed Dillery approach his vehicle on the passenger's side of the car. Her daughter was in her lap. As Dillery passed the car, the motorist thought he saw Dillery's daughter hit her head and arm on his car's mirror. He reported the incident to the police, who subsequently called protective services. Protective services came to Dillery's home the following day and checked her daughter, who displayed no signs of injury. However, the police still charged Dillery with child endangerment. Dillery was acquitted of this charge after a jury trial.

On several other occasions, citizens complained to police officers about Dillery's riding her wheelchair in the street and the fact that cars were swerving to avoid her or nearly hitting her. Police officers investigated these complaints and cited Dillery for being a pedestrian in the roadway.

Dillery subsequently filed suit against the City of Sandusky, members of its City Commission in their official capacities, the City Engineer, Chief of Police, and Acting Police Chief in their official capacities, and Officer Tracy Brewer, individually and in her capacity as a police officer, in the Northern District of Ohio. She sought a preliminary injunction against the defendants to prevent them from "arresting or otherwise harassing her" in the City of Sandusky and also to prohibit them from installing or changing any buildings, streets, or walkways, unless the changes comported with the requirements of the ADA. She also alleged violations of the Rehabilitation Act, the ADA, and various state and federal provisions. She sought injunctive and declaratory relief, compensatory damages, and attorneys' fees and costs.

The defendants moved for summary judgment. The district court granted this motion in its entirety. Dillery filed a motion for reconsideration or to alter or amend the judgment. The court granted the motion in part as follows: (1) it vacated the portion of the opinion granting summary judgment to the city "on the matter of Defendant's compliance with the Americans With Disabilities Act sidewalk accessibility regulations;" and (2) it adopted portions of Judge Carr's final order in *Ability Center of Greater Toledo v. City of Sandusky*, an opinion that held that Sandusky violated the ADA by failing to install proper curb cuts and ramps at numerous intersections. The remainder of the motion was denied.

The defendants filed a timely notice of appeal from this judgment. Dillery filed a timely notice of cross-appeal.

In March 2003, Dillery filed a motion for attorneys' fees and costs pursuant to the ADA. The defendants opposed the motion, arguing that Dillery was not a prevailing party and thus was not entitled to fees and costs. The district court denied Dillery's motion, concluding that "Plaintiff's success and its impact on Defendants, if any, [was] so limited as to represent a mere moral or pyrrhic victory." Dillery filed a timely notice of appeal of this decision.

II.

The defendants challenge the district court's decision, on plaintiff's motion for reconsideration, to adopt portions of Judge Carr's decision in *Ability Center of Greater Toledo v. City of Sandusky*. Based on *Ability Center*, the district court found that *Alexander v. Sandoval*, 532 U.S. 275 (2001), did not bar Dillery's claims. The district court also adopted certain paragraphs from Judge Carr's order in *Ability*

---

[1] Officer Brewer planned to cite Dillery for child endangerment, believing that Dillery's child was the person sitting in her lap. However, Officer Brewer served only the citation for being a pedestrian in the roadway upon learning that Dillery was accompanied by an adult friend on this trip and not her daughter.

*Center*. In adopting these paragraphs, the district court determined that Sandusky violated the ADA when it "illegally failed to properly install or maintain curb cuts and ramps when resurfacing streets and altering or installing city sidewalks." On appeal, the defendants argue that Dillery does not have a private right of action to pursue her claims based on the failure of Sandusky to comply with regulations concerning the accessibility of facilities.

Defendants' argument was previously raised and rejected by this court in *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004), the appeal from Judge Carr's decision that was adopted in part by the district court in this case. *Ability Center* establishes that plaintiffs do have a private cause of action to pursue claims challenging public entities' failure to comply with regulations that create certain accessibility standards. In that case, we concluded that "if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute." *Id.* at 906. The regulations at issue in *Ability Center* were designed to implement section 202 of the ADA, which prohibits public entities from discriminating against those with disabilities. *See* 42 U.S.C. § 12132. Because the accessibility regulations facilitate meaningful access to these public entities, they "effectuate[ ] this aim" of section 202 and thus are "enforceable through Title II's private cause of action." 385 F.3d at 913.

Defendants' argument that Dillery does not have a private cause of action to pursue relief based on the ADA's accessibility regulations fails based on *Ability Center*.

### III.

Dillery raises three issues on appeal with regard to the district court's resolution of her lawsuit. She contests the following: (1) the district court's determination that defendants did not intentionally discriminate against Dillery; (2) the district court's grant of summary judgment to defendants on various issues; and (3) the district court's failure to grant injunctive relief to Dillery.

### A.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

Dillery argues that the defendants engaged in intentional discrimination in violation of Title II of the ADA through three separate omissions or actions: (1) the City failed to install proper curb cuts and sidewalks; (2) the City failed to listen to her complaints about the inaccessibility of the streets and curbs and the City's police officers stopped her because she rode her wheelchair in the street; and (3) the City failed to train its officers about the ADA.

The failure of Sandusky to install handicapped-accessible sidewalks and to train its employees about the ADA affects all disabled persons, not just Dillery. Thus, Dillery cannot demonstrate that Sandusky intentionally discriminated against her specifically by failing to undertake these actions. "[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997).

Dillery also contends that the Sandusky police "stopped, charged and harassed Plaintiff because she is disabled." Further, she argues that they made no reasonable accommodation for her. However, the record reflects that the police did not stop Dillery because of her disability, but rather stopped her in response to

citizen complaints about her being in the roadway. The four times that Dillery was charged with a violation all resulted from citizen complaints in which others reported that: "vehicles had to stop or swerve" to miss striking her, "a small child [was] laying across her lap" as she drove her wheelchair in the road, "they almost hit a white female in a wheelchair," and "numerous vehicles were swerving to keep from striking the subject as she kept swerving into traffic." The police were motivated by citizen complaints of potential violations that were occurring and were not subjecting Dillery to discrimination "solely because of her disability." *Jones*, 341 F.3d at 477 (requiring actions to be taken solely because of a person's disability in order to establish a prima facie violation of Title II). Because the police were discharging their duties in investigating citizen complaints and keeping the roadways safe for both Dillery and passing vehicles, their actions do not constitute intentional discrimination.

We agree with the district court that Dillery cannot sustain a claim for intentional discrimination.

### B.

Next, Dillery argues that the district court erred in granting summary judgment to the defendants on various state and federal claims. The district court granted summary judgment for the defendants on Dillery's claims as follows: (1) the regulations requiring public entities to engage in a self-evaluation and create a transition plan do not create a private right of action against Sandusky and Dillery was not subjected to discrimination as a result of the failure to create such a transition plan; (2) Dillery did not demonstrate intentional discrimination on the part of defendants and thus compensatory damages were not available to her; (3) Dillery has no legally cognizable claims for malicious prosecution or false arrest; (4) Dillery presented no evidence that her injury was a result of the inadequate training of Officer Brewer; (5) Sandusky is not liable under 42 U.S.C. § 1983 for the actions taken by Officer Brewer; (6) Officer Brewer was entitled to qualified immunity for her actions; and (7) the defendants are entitled to immunity under Ohio law. In ruling on Dillery's motion for reconsideration, the district court further clarified that Dillery failed to offer evidence sufficient to withstand summary judgment on the issue of selective enforcement of criminal laws.

Dillery does not specifically address each of these claims in her appeal; however, she does generally assert that disputed issues of material fact exist, making summary judgment inappropriate. For the reasons stated by the district court and because there are no genuine issues of material fact, the district court properly granted summary judgment to the defendants with regard to each of these claims.

### C.

Dillery raises as an issue whether the trial court erred in failing to grant her an injunction prohibiting the Sandusky police from stopping or charging her for not using city sidewalks. However, she devotes no part of her brief to this argument. It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Because Dillery wholly fails to address this issue in her appellate brief, we conclude that she has waived her right to appeal the district court's denial of injunctive relief.

### IV.

Finally, Dillery appeals the district court's denial of her request for attorneys' fees. The ADA provides that "[i]n any action . . . commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205. A district court's decision to grant or deny attorneys' fees is reviewed for an abuse of discretion. *Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 357 (6th Cir. 2004).

In order for a plaintiff to receive attorneys' fees in a civil rights action, the plaintiff must be the prevailing party. 42 U.S.C. § 12205. A plaintiff may be considered a prevailing party if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in

bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989), such that "the defendant's behavior [is modified] in a way that directly benefits the plaintiff," *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). However, a "technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." *Tex. State Teachers Ass'n*, 489 U.S. at 792.

The district court denied Dillery's motion for attorneys' fees. It declined to determine if Dillery was the prevailing party, instead holding that even if she were the prevailing party, "the only reasonable attorney's fees are none at all."

The district court did not abuse its discretion in reaching this decision. Dillery only prevailed on the issue of whether Sandusky violated the ADA with respect to the accessibility of its curbs.[2] However, Dillery obtained no relief from prevailing on this issue, because Judge Carr in *Ability Center* previously had granted injunctive relief to class members. Her victory did not "materially alter[ ] the legal relationship between the parties." *Farrar*, 506 U.S. at 111.

In her brief, Dillery contends that she did obtain relief, because "she did experience a cessation of the harassment that she had previously been receiving" from the defendants. However, the district court had no evidence before it that the alleged harassment had stopped, and the district court never granted injunctive relief to Dillery on this issue. Thus, she did not obtain "actual relief on the merits of [her] claim" as required to be a prevailing party. *See id.* As noted by the *Farrar* court, "no material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree or settlement against the defendant." *Id.* at 113. In this case, even if defendants did stop "harassing" Dillery, it was not the result of a judgment, consent decree or settlement obtained through the judicial process and therefore does not confer prevailing party status on Dillery.

Finally, the district court did not abuse its discretion in concluding that, even if Dillery were a prevailing party, "the only reasonable attorneys' fees are none at all." In reaching this conclusion, the district court properly analyzed the plaintiff's relief in the context of the relief already granted to the class by Judge Carr.

We conclude that the district court did not abuse its discretion in declining to award attorneys' fees to Dillery.

V.

For the foregoing reasons, we affirm the district court's partial grant of summary judgment to the defendants, its partial grant of Dillery's motion for reconsideration, and its denial of Dillery's motion for attorneys' fees.

---

[2] A plaintiff need not prevail on all claims asserted in the complaint to obtain attorneys' fees. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).

---

**CONCURRING IN PART, DISSENTING IN PART**

---

MERRITT, Circuit Judge, concurring in part and dissenting in part.  In this lawsuit, Kelly Dillery essentially sought relief on two grounds: (1) the City of Sandusky's failure to comply with the requirements of the ADA and (2) the City of Sandusky's  treatment of her in response to her decision to ride her wheelchair in the street.  The district court ruled in Dillery's favor on the first ground and against Dillery on the second.  In this case, we have affirmed both rulings.  I write separately because I believe the district court erred in refusing to award attorney's fees based on Dillery's successful suit for injunctive relief.

As the majority writes, "the district court determined that Sandusky violated the ADA when it 'illegally failed to properly install or maintain curb cuts and ramps when resurfacing streets and altering or installing city sidewalks.'"  The district court  issued an injunction in this case that has the force of law behind it.  The City of Sandusky concedes that the court adopted portions of the *Ability Center* decision "ordering [the city] to repair the ramps that were installed improperly."  Appellee's Br. at 7.  Yet the district court found that the plaintiff who successfully sought this relief was entitled to no attorney's fees at all.  It appears quite clear that Dillery is a prevailing plaintiff at least with regard to the suit for injunctive relief for ADA non-compliance.  By obtaining an enforceable judgment on the merits against the defendant, Dillery qualifies as a prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992): "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind."

Under the ADA, a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1232 (10th Cir. 1997) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *accord Vitale v. Georgia Gulf Corp.*, 82 Fed. Appx. 873, 876 (5th Cir. 2003); *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002); *see also Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 520 (7th Cir. 2003) ("Fees should be awarded [under the ADA] to prevailing plaintiffs as a matter of course.").

The only reason that the district court and the majority give for rejecting attorney's fees in this case is that the injunction issued for plaintiff Dillery mirrored an injunction that was issued in a previous decision. *See Ability Center of Greater Toledo v. City of Sandusky*, 133 F. Supp. 2d 589 (N.D. Ohio 2001), *aff'd* 385 F.3d 901 (6th Cir. 2004).  In *Ability Center*, a non-profit center and others successfully brought a class action suit seeking an injunction ordering ADA compliant sidewalks in Sandusky.  Thus, when the injunction was issued in Dillery's case, another injunction making the same demands was already in effect.  By the district court's and the majority's argument, the second injunction achieved by Dillery had no real effect on the city's behavior, but was merely redundant.

While Dillery's injunction was issued subsequent to the *Ability Center* decision, her complaint against the city was filed first.  Dillery brought suit challenging the non-compliance of Sandusky's sidewalks in June of 1999, almost three months prior to the class action plaintiffs.  The subsequent class action complaint makes nearly identical claims on nearly identical theories concerning Sandusky's sidewalks.  At several points, the class action complaint points to the exact same intersections as Dillery's complaint.  During the pendency of Dillery's suit,  the class action was resolved in the class's favor.  Thus, when the court finally resolved Dillery's suit, there was already an injunction in place.  It seems bizarre that the slower progress of a case through the judicial process should control the awarding of attorney's fees.

Moreover, as the majority acknowledges, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989).  The majority errs in suggesting that Dillery's victory did not materially alter the legal relationship between the parties. Of course it did.  As the Supreme Court has pointed out, a "material alteration of the legal relationship between the parties occurs [when] the

plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar*, 506 U.S. at 113. When the district court issued its decision, Dillery, separate and apart from any membership in the *Ability Center* class, was vested with the right to enforce the terms of the injunction against the city. *Cf. Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002) (determining that plaintiff who could enforce settlement agreement against defendants was a prevailing party under the ADA).

The district court's ruling for Dillery is not diminished because it adopts the findings and reasoning of another opinion. Had this Court vacated the *Ability Center* decision of the district court on procedural grounds, the legal force of Dillery's case would still oblige the city's compliance with the ADA. Moreover, if Dillery is harmed by Sandusky's non-compliance with the injunction (for example, if the city should fail to follow the injunctive order in the repair of streets near Dillery's house), she can return to the court to enforce her judgment even if the *Ability Center* plaintiffs are perfectly happy with the city's response. Dillery's victory is neither merely technical nor *de minimis*.[1] This judgment of a United States district court imposes quite serious and quite costly obligations on Sandusky, which may partially explain why the city appealed the district court's decision.

Permitting the district court to reject attorney's fees on these grounds is a dangerous precedent for fee-shifting provisions like that included in the ADA. Fee-shifting provisions are intended "to promote vigorous enforcement" of laws by private plaintiffs regardless of their ability to pay for representation. *See Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). A rule that awards fees only to the first lawyer to the finish line may actually operate as a disincentive for attorneys to take on cases for injunctive relief. Alternatively, such a rule could promote slipshod and hurried representation when attorneys become aware of similar pending cases. The fee-shifting provisions of the ADA are meant to generally reward the plaintiff when courts vindicate their rights and award them relief unless such reward would result in injustice. As Dillery is legally and equitably entitled to attorney's fees, I respectfully dissent from Part IV of the majority opinion.

---

[1]The Supreme Court has indeed found that "[i]n some circumstances, even a plaintiff who formally "prevails" . . . should receive no attorney's fees at all." *Farrar,* 506 U.S. at 115. In *Farrar*, a plaintiff who had sought $17 million in compensatory damages from a range of defendants was awarded nominal damages of $1 from one defendant. *Id.* at 106-108. The court found nominal damages in this quest for large compensatory damages to be a technical victory, but a practical defeat. *Id.* at 114-15. See *also Rhodes v. Stewart*, 488 U.S. 1 (1988) (reversing attorney's fees premised solely on a declaratory judgment); *Booker v. Waters*, 1998 WL 252744, at *4 (6th Cir. 1998) (rejecting attorney's fees where only success was court order directing TVA to conduct a search to determine if at-home work might be available for a disabled plaintiff); *Higgs v. Bland*, 888 F.2d 443, 451 (6th Cir. 1989) (rejecting award to plaintiffs whose suit resulted in a judicial opinion suggesting greater caution and procedural safeguards for prison drug-testing where opinion denied actual injunctive relief) ("We, therefore, conclude that the points on which plaintiffs prevailed, if any, were *de minimis* . . . ."). The present case, where the plaintiff was awarded injunctive relief is quite different from these examples of technical or *de minimis* victories.