**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0549n.06
Filed: August 7, 2007

**No. 06-6207**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DENISE R. STILTNER** | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellee.* | ) | |

**BEFORE:** **BATCHELDER and COLE, Circuit Judges; PHILLIPS, District Judge**[*]

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Denise Stiltner appeals the district

court's grant of judgment on the administrative record in favor of Defendant-Appellee Commissioner

of Social Security in this action brought under 42 U.S.C. § 405(g) to obtain review of an

administrative law judge's ("ALJ") decision denying Stiltner's application for various disability

benefits. For the following reasons, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

On October 27, 2000, Stiltner, at the time, 40 years old with a high-school diploma and one

year of college, filed an application for a period of disability, disability insurance benefits, and

---

[*]The Honorable Thomas W. Phillips, United States District Judge, Eastern District of
Tennessee, sitting by designation.

supplemental security income, alleging disability beginning on August 23, 1999, due to a spinal disc herniation and fibromyalgia. Stiltner's application stated that she was five feet, two inches tall and weighed 240 pounds; over the preceding 15 years, she had been employed as a teacher's aid, baby sitter, and cashier; her ailments prevented her from lifting, bending, standing, and sitting; and she had stopped working due to hernia surgery and back pain.

After the Social Security Administration ("SSA") denied Stiltner's application both initially and on reconsideration, Stiltner requested a hearing before an ALJ, claiming that her ailments had worsened and that she was now experiencing severe depression and insomnia. Following a hearing, the ALJ denied Stitlner's application, and the Appeals Council denied Stiltner's request for review. Stiltner then filed a civil action in United States District Court for the Eastern District of Kentucky, challenging the denial-of-benefits decision. The district court remanded the case to the SSA, concluding that the ALJ's decision was not supported by substantial evidence. The district court's order noted that the ALJ presented a hypothetical question to the vocational expert that minimized Stiltner's limitations and did not provide "good reasons" for discounting Stiltner's treating physician's repeated opinion that Stiltner was disabled.

On remand, Stiltner received a new hearing before a different ALJ. The ALJ issued a decision again denying Stiltner's application on the same grounds as the previous ALJ, namely that, although Stiltner had "severe" impairments, she was nonetheless not disabled because there were a significant number of jobs in the national economy that she could still perform. This time, however, the ALJ set forth specific reasons for rejecting Stiltner's treating physician's opinion. The Appeals Council

denied Stiltner's request for review, making the ALJ's decision the final decision of the Commissioner.

Stiltner then filed this civil action in district court, seeking review of the Commissioner's denial. In granting judgment on the administrative record in favor of the Commissioner, the district court concluded that substantial evidence supported the ALJ's denial, finding that the "ALJ carefully set forth reasons for which he was giving [Stiltner's treating physician]'s opinion of disabling impairment little weight." *Stiltner v. Comm'r of Soc. Sec.*, No. 05-177-HRW, slip op. at 6 (E.D. Ky. July 17, 2006).

Stiltner timely appealed.

## II. DISCUSSION

### A. The ALJ's Rejection of Stiltner's Treating Physician's Opinion

Stiltner's sole argument on appeal is that the ALJ improperly discounted the disability evidence submitted by her treating physician, neurologist Dr. Bal Bansal. At oral argument, Stiltner contended, for the first time, that the ALJ also improperly discounted the opinion of another physician, an alleged treating source, Dr. Ben Odell. This argument is meritless. As an initial matter, Stiltner waived any argument regarding Dr. Odell by not including it in her brief. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005). In any event, even assuming Dr. Odell was a treating source, Dr. Odell never concluded that Stiltner was disabled. His notes reflect that he only counseled Stiltner "to apply for disability and [to] go to the social security office and obtain those papers"

before referring Stiltner, at Stiltner's request, to Dr. Bansal. (Administrative Record ("AR") 171, 173.)

### 1.    Dr. Bansal's Opinion

Between April 2000 and September 2004, Stiltner sought treatment from Dr. Bansal for fibromyalgia, depression, anxiety, spinal-disc herniation, chronic migraines, hypothyroidism, and type-2 diabetes. The administrative record contains Dr. Bansal's notes from numerous office visits, over the span of four years. Stiltner's first two consultations with Dr. Bansal were unremarkable: Stiltner complained of neck and back pain, extreme fatigability, extreme tiredness, depression, and inability to sleep at night. Dr. Bansal prescribed medication for her ailments, recommended physical therapy and exercise, and ordered diagnostic testing (i.e., an MRI of the spine, nerve-conduction studies, and an EMG).

Stiltner's condition, however, took a turn for the worse after attending a sporting event with her husband. Dr. Bansal's consultation notes indicate that Stiltner complained of crippling back pain; an inability to bend, stoop, or lift; an inability to sit, stand, walk, or lie down for more than a few minutes without changing positions frequently; and severe depression. In response, Dr. Bansal altered her medication, again recommended physical therapy and exercise, and again ordered a nerve-conduction study and an EMG.

At their next consultation, some ten months later, on June 25, 2001, Dr. Bansal noted that Stiltner was "doing somewhat better," however, concluded that

> [t]he patient at this time is *totally disabled* to be employed into any sustained gainful employment even light duty work as the patient is suffering from severe fibromyalgic syndrome with depression associated with generalized anxiety disorder. Anytime she does any bending, stooping or lifting, the above symptoms get worse. Anytime she sits for more than a few minutes, stands or walks for more than a few minutes or while lying down, she has to frequently change her posture in order to get some relief.

(AR 244 (emphasis added).) In addition, Dr. Bansal completed a form for submission to the Kentucky Retirement Systems, stating that Stiltner "is [t]otally [d]isabled. She will not be returning to work" due to "Displaced Cervical Disc [and] Fibromyalgia." (AR 245.) Dr. Bansal's notes from their next two consultations similarly indicated that Stiltner was "in no medical condition to return to work, even light duty work, even on a part-time basis," "definitely [could ]not return to her original employment," and was "totally disabled to be employed into any sustained gainful employment . . . ." (AR 263, 265.)

Dr. Bansal reiterated this same opinion following three separate consultations after the first ALJ hearing. (AR 450, 452, 455.) In July 2004, Dr. Bansal prepared a functional-capacity assessment concluding that Stiltner could lift or carry only 25 pounds, stand or walk for only 15 minutes, sit for only 15 minutes; could never climb, stoop, crouch, kneel, or crawl; and could not work around dust, fumes or chemicals. (AR 543–45.) Stiltner last visited Dr. Bansal in September 2004. Afterwards, Dr. Bansal prepared a report consistent with his prior opinions stating the following:

> The patient continues to complain of neck pain and pain in the mid and lower back even pain down the legs. Anytime she sits for more than a half an hour, stands for more than a half an hour, lies down for more than half an hour she has to frequently change posture in order to get some relief. Anytime she is under any stress the fibromyalgic syndrome gets worse and her depression gets worse.
> . . .

> Neurological examination shows a significant spasm in the cervical, thoracic, and lumbosacral area with limitation of cervical and dorsal lumbar spine movements with multiple tender points in the entire paraspinous musculature as well as the upper and lower extremities.
>
> . . .
>
> It is my opinion that the patient is totally and permanently disabled to incline [sic] any substantial employment, even light duty work on a part time basis.

(AR 571–72.)

### 2.    ALJ's Rejection of Dr. Bansal's Opinion

Notwithstanding Dr. Bansal's repeated and consistent opinions over a four-year period, the

ALJ gave Dr. Bansal's opinion of disabling impairments little weight. The ALJ's decision after the

second disability hearing stated the following reasons for discounting Dr. Bansal's opinion:

> The District Court requested reconsideration of the opinion of Dr. Bansal that the claimant has a greater degree of limitation. The undersigned has reviewed the updated medical records received from Dr. Bansal in conjunction with his prior opinion that the claimant can perform only a limited range of sedentary work. However, I find that Dr. Bansal's opinion is not [sic] entitled to little weight under 20 CFR 404.1527(d)(2), because it appears to be based primarily on the claimant's subjective symptoms and not objective data. For the reasons set forth above, I am not persuaded that the claimant is fully credible. Dr. Bansal's own treatment notes support that the claimant retains adequate neurolgic and motor function. The claimant also exhibited adequate and pain-free range of motion when examined by Dr. Westenhofer and recent consultative exam by Dr. Burns revealed normal gait and station, normal muscle strength, normal range of motion of the joints and back, negative straight leg raise, normal grip, normal squat, and she was not found to have significant spasms. Thus, I find that Dr. Bansal's opinion of greater limitation is not well-supported by the weight of the objective medical evidence. As further support, the record reflects only limited treatment by Dr. Bansal and others, and the claimant admitted seeing Dr. Bansal only three times since the prior hearing. Dr. Bansal has also opined that the claimant has very limited or "poor" mental health functioning. I afford this opinion little weight as Dr. Bansal is not a qualified mental health professional and his own treatment notes support the opinion of a recent consultative examiner that the claimant's alleged anxiety and depression are mild and manageable with medications. For the reasons set forth above I afford more weight to the opinions of the two consultative psychological examiners and also opinion of a

> medical expert in psychiatry, Dr. Gitlow, whose opinions together support that the claimant does not have significant functional limitations secondary to her psychiatric symptoms.

(AR 283 (citations omitted).)

**B.     Merits**

The SSA's regulations require the Commissioner to "give good reasons" for not giving controlling weight to a claimant's treating physician because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). An administrative law judge must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id*. If the opinion of a treating physician is not accorded controlling weight, an administrative law judge must apply certain factors in determining what weight to give the opinion—specifically, the length of the treatment relationship and the frequency of examination, *id*. § 404.1527(d)(2)(i), the nature and extent of the treatment relationship, *id*. § 404.1527(d)(2)(ii), the nature and extent of relevant evidence that the treating physician presents supporting his opinion, *id*. § 404.1527(d)(3), consistency of the opinion with the record as a whole, *id*. § 404.1527(d)(4), and

the treating physician's specialization, *id.* § 404.1527(d)(5). *See also, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

As an initial matter, we note that the "'determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985)); *accord* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Therefore, Dr. Bansal's repeated statements that Stiltner is "totally disabled" are entitled to little or no weight if not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2). As the ALJ noted, the only objective medical evidence that Dr. Bansal relied on in making his repeated disability determinations were the results of an MRI, which revealed signs of disc herniation and spondylolisthesis, and an EMG, which revealed nothing abnormal. (AR 283.) Dr. Bansal did not, however, proclaim Stiltner disabled after receiving the MRI results in June 2000 (*see* AR 248), but did so for the first time eight months later. (*See* AR 245.) Dr. Bansal received no new test results during the intervening eight months but did consult with Stiltner twice. As such, as the ALJ noted, Dr. Bansal's opinion that Stiltner was disabled "was based primarily on the claimant's subjective symptoms and not objective data." (AR 283.) Moreover, Dr. Bansal's functional-capacity assessment, in which he indicated that Stiltner could lift up to 25 pounds, stand or walk for up to 15 minutes per day, and sit up to 15 minutes per day, was devoid of any explanation, rationale, clinical findings, or references to objective testing, such as an MRI, EMG,

or nerve-conduction study. Again, as the ALJ noted, Dr. Bansal's assessment appeared to be based primarily on Stiltner's subjective symptoms. Indeed, the ALJ found "the credibility of Stiltner's subjective complaints (and allegedly related functional limitations) to be fair at best." (AR 282.) Because Dr. Bansal's repeated statements that Stiltner was "totally disabled" were unaccompanied by objective medical evidence, the ALJ did not err by according those statements little weight.

Moreover, as the ALJ noted in his denial decision, Dr. Bansal's repeated statements that Stiltner is "totally disabled" is inconsistent with substantial evidence in the administrative record. (AR 283.) Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ explained that Dr. Bansal's own treatment notes support a finding that Stiltner retained adequate neurologic and motor functions. (AR 283.) Further, examinations by two other consultative doctors revealed that Stiltner exhibited an adequate and pain-free range of motion. (AR 283.)

Finally, the ALJ addressed all the relevant 20 C.F.R. § 404.1527(d) factors in deciding not to give controlling weight to Dr. Bansal's opinion. The ALJ noted that Stiltner saw Dr. Bansal "only occasionally," and "only three times since the [first] hearing," *see* 20 C.F.R. § 404.1527(d)(2)(i), that Dr. Bansal provided "only limited treatment," *see id.* § 404.1527(d)(2)(ii), that Dr. Bansal's opinion was "not well-supported by the weight of the objective medical evidence," *see id.* § 404.1527(d)(3), that Dr. Bansal's opinion was not consistent with the record as a whole, *see id.* § 404.1527(d)(4), and that Dr. Bansal was not a qualified mental-health professional, entitling his opinion regarding

Stiltner's functional limitations, incident to her psychiatric symptoms, to little weight, *see id.* § 404.1527(d)(5). (AR 283.)

Our review of the record reveals that the ALJ provided a lengthy and thorough discussion of all of the relevant evidence. The ALJ did not summarily dismiss Dr. Bansal's opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (approving ALJ's decision declining to give treating sources controlling weight where ALJ's decision stated that sources' reports were "inconsistent with the overall evidence of record" and sources formed their opinion solely from claimant's subjective symptoms); *Anderson v. Comm'r of Soc. Sec.*, 195 F. App'x 366, 370 (6th Cir. 2006) (approving ALJ decision declining to give treating physician controlling weight where ALJ's decision stated "that the doctor's overall treatment notes did not support and were not consistent with his conclusory assertion that [the claimant] was disabled"); *cf. Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, at 245–46 (6th Cir. 2007) (remanding where ALJ did not explain weight given to treating physician's opinion); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749–50 (6th Cir. 2007) (remanding where ALJ "entirely failed to address the primary treating source's presumptively supportable opinion"); *Wilson*, 378 F.3d at 545 (remanding where ALJ summarily dismissed treating physician's opinion).

### III. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.