**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0203n.06

No. 08-4466

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Mar 31, 2010
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| BERNHARD MATULESSY, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **ON PETITION** FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., | ) | **O P I N I O N** |
| Attorney General, | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**BEFORE: BOGGS and NORRIS, Circuit Judges; ADAMS, District Judge.**[*]

**ALAN E. NORRIS, Circuit Judge.** Petitioner Bernhard Matulessy seeks review of a

decision by the Board of Immigration Appeals ("BIA") that denied his application for asylum under

the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1) (2006), withholding

of removal, 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture ("CAT"), 8

C.F.R. § 1208.16(c) (2008). For the reasons that follow, we deny the petition for review.

**I.**

Petitioner is a citizen of Indonesia who entered the United States as a non-immigrant visitor

on March 14, 2001 with authorization to remain in the country for three months. He filed an

application for asylum and for withholding of removal on March 12, 2002 without the assistance of

---

[*] The Honorable John R. Adams, District Judge for the Northern District of Ohio, sitting by
designation.

counsel. (A.R. 196.) The application was returned to him, however, with a request for further information. According to petitioner, he did not comply with this request because his command of English was limited and he did not understand what was required. (A.R. 218.) On April 17, 2003, he received a Notice to Appear ("NTA"), which charged that he had overstayed his authorization to remain in the United States and was therefore subject to deportation. (A.R. 364.)

After retaining counsel, petitioner appeared before an immigration judge on September 12, 2006 and conceded that the statements set forth in the NTA were correct and that he was, in fact, subject to removal. (A.R. 120.) In the interim, however, counsel had filed a second application for asylum or withholding of removal on his behalf.[1] (A.R. 211.) According to that application and the testimony that petitioner gave at the September 2006 hearing, he is a member of the Seventh Day Adventist Church who "fear[s] the Islamic radicals who are well organized all over Indonesia." (A.R. 216.) These radicals regard Christians as "sell outs and traitors" who, as petitioner puts it in his application, could "easily find me there and torture and kill me." (A.R. 216.) However, the sole incident of persecution recalled by petitioner occurred in Ambon, Indonesia in 1999. According to his hearing testimony, petitioner was returning from a business trip by boat and stopped at the port to seek out relatives who lived nearby. Accompanied by a friend, petitioner rented a car for the trip. On the way they encountered a group of men wearing distinctive clothing, which identified them as Muslims. The group signaled petitioner to stop. He slowed down but then accelerated because he felt threatened. The men threw rocks at the car but none of them entered the vehicle or otherwise

---

[1]The application also seeks relief based upon the CAT. (A.R. 215.)

injured him. (A.R. 158-59.)

At the hearing, petitioner conceded that he was never prevented from attending religious services as a youngster. (A.R. 160.) His father, brother, and sister continue to live in Indonesia and have practiced their Christian faith without incident. (A.R. 161.) Petitioner attributed this lack of difficulty to the fact that they live in a predominantly Christian area of the country. However, his wife and two daughters, who reside near the capital of Jakarta also attend a Seventh Day Adventist Church and "[f]or going to church we never have any problems." (A.R 162.)

Although petitioner's surname indicates that he is Christian, petitioner has not personally experienced mistreatment but rather has a generalized fear of radical Muslims. (A.R. 168-171.) His brother-in-law, however, is a Seventh Day Adventist pastor who, according to petitioner, had a bounty placed upon his head because of his religious affiliation, and now lives in New Hampshire after a grant of asylum. (A.R. 166-67.)

At the close of the hearing, the immigration judge rendered an oral decision. (A.R. 28.) With respect to the asylum claim, the immigration judge found it barred by the one-year statute of limitations. 8 U.S.C. § 1158(a)(2)(B). This one-year limit does not apply, however, "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). For her part, the immigration judge concluded that petitioner had not shown that this exception applied to him. (A.R. 47.) Even if the asylum claim were not barred by the statute of limitations, the immigration

judge went on to hold that petitioner had failed to show that he had a well-founded fear of persecution based on a protected ground, which "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." (A.R. 51) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).

The immigration judge also noted that petitioner's wife, children, father, and siblings, all of whom are Seventh Day Adventists, "have not been prevented from practicing their faith in any way shape or form." (A.R. 52.) Moreover, the petitioner testified that "there are not many disturbances based upon religious conflict" where his father and siblings live. (A.R. 53.) Among other things, petitioner must overcome the presumption that he "does not have a well-founded fear of persecution if such persecution could be avoided by relocation within the country." (A.R. 53) (citing *In re C-A-L*, 21 I & N Dec. 754, 757-58 (BIA 1997)). In this case, "there is evidence from the [petitioner's] own testimony, that his father and two siblings reside in a majority Christian area in which there are not very many disturbances on . . . religious grounds . . . . [and] this Court finds that the [petitioner] has failed to demonstrate that his alleged well-founded fear is country wide." (A.R. 54.)

For all these reasons – the failure to file within the one-year deadline for filing an asylum application, to demonstrate past persecution or a well-founded fear of future persecution, and, finally, to establish that he could not relocate to an area within the country where he would not be subject to persecution – petitioner's asylum application was denied.

With respect to the second claim for relief, withholding of removal, the immigration judge

concluded that "if the respondent cannot meet the lower burden required for asylum, th[en] he cannot therefore meet the higher burden required for withholding of removal under the Act and that relief is also denied." (A.R. 54.)

Finally, the immigration judge rejected petitioner's CAT claim because, in her view, the testimony offered at the hearing was "speculative" and failed to establish that "it is more likely than not that the respondent would suffer torture if returned to Indonesia." (A.R. 55.)

Petitioner appealed to the BIA, which dismissed the appeal in an order dated October 8, 2008. (A.R. 2.) The BIA determined that the immigration judge had properly found petitioner's asylum application to be time-barred and that petitioner had failed to demonstrate either the changed or extraordinary circumstances necessary to overcome the one-year filing requirement. With respect to withholding of removal and the CAT, the BIA considered all of the incidents described by petitioner and concluded that "he did not adequately demonstrate that the harm he suffered rises to the level of past persecution on account of a ground protected under the Act." (A.R. 3) (citing *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004)). Moreover, petitioner "failed to meet his high burden of establishing that it is more likely than not that he will be persecuted or tortured if returned to Indonesia." (A.R. 3) (citing 8 C.F.R. § 1208.16(b)-(c)). Finally, the BIA agreed that petitioner had failed to establish "that it would not be reasonable for him to relocate within Indonesia." (A.R. 3) (citing 8 C.F.R. §§ 1208.13(b)(3)(i), 1208.16(b)(3)(i)).

Represented by new counsel, petitioner filed a timely petition for review in this court. Our jurisdiction is conferred by 8 U.S.C. § 1252(a), which governs judicial review of orders of removal.

Although petitioner's brief contains a statement that this court also has jurisdiction to review the asylum and CAT claims, nowhere does it address the substance of those claims and we deem them waived on appeal. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)) *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005) (same); Fed. R. App. P. 28(a)(9)(A) (requiring appellant's brief to contain the "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

**II.**

Where the BIA adopts the immigration judge's opinion with additional commentary, "that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citations omitted). This court reviews legal conclusions *de novo* and factual findings for substantial evidence. *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005). Under the substantial evidence standard, we deem findings of fact "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

To qualify for withholding of removal, petitioner must demonstrate by a "clear probability" that, if removed to Indonesia, he will suffer future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006); 8 C.F.R. § 1208.16(b)(2). We presume future persecution if an

alien establishes past persecution. 8 C.F.R. § 1208.16(b)(1)(i).

Petitioner concedes that this court has held that "persecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated events, *see, e.g., Mikhailevitch*, 146 F.3d at 390, but goes on to remind us that "the line between persecution and mere harassment is frequently difficult to perceive." *Kacaj v. Gonzales*, 132 F. App'x 584, 587 (6th Cir. 2005). We do not quarrel with that summary of this circuit's view that persecution is a fact-intensive inquiry in which line drawing is often difficult. However, we do quibble with petitioner's subsequent statement that he "was specifically targeted on account of being an Ambonese Christian." *See* Petitioner's Brief at 12. Nowhere is that statement supported in the administrative record. As the immigration judge pointed out, the only incident in which petitioner may – and we emphasize "may" – have been targeted for his Christian faith was when he was flagged down by a group of men whom he identified as Muslim. Nothing came of that incident, however, and there is nothing in the record to support a finding that petitioner's Christianity played a role in his being flagged down by the group. As recounted by the immigration judge and the BIA, the remainder of the evidence supports the finding by both bodies that he did not suffer past persecution: he was never prevented from practicing his faith and his extended family continues to do so (with the possible exception of his brother-in-law).[2] In short, substantial evidence supports the holdings below that petitioner did not suffer past persecution based

---

[2]Petitioner did not submit an affidavit from his brother-in-law or other documentary evidence to support the fact that he had been granted asylum. For the purposes of this appeal, we accept it as true, as did the immigration judge, but hold that it is insufficient to support a finding of past persecution with respect to petitioner.

upon a protected ground.

Petitioner's primary argument focuses less on past persecution, to which he devotes a mere page of his brief, than upon the contention that he will be persecuted if returned to his native country. If, as in this case, an alien fails to establish past persecution, he must prove that it is "more likely than not" that he would suffer such harm if removed. 8 C.F.R. § 1208.16(b)(1)(iii). Petitioner directs us to a series of Ninth Circuit decisions that he believes support his position. In the first of these, *Sael v. Ashcroft*, 386 F.3d 922, 925 (9th Cir. 2004), the court concluded that "the ethnic Chinese minority is a 'disfavored group'" in Indonesia. While Sael was a Christian, the Ninth Circuit's conclusion that she belonged to a disfavored group hinged on her Chinese ethnicity rather than on her Christianity. Moreover, we note that Sael advanced an asylum claim, which only requires her to prove that she had a "well-founded fear" of persecution, *id*. at 924, not the more exacting "more likely than not" standard faced by an alien seeking withholding of removal. See 8 C.F.R. § 1208.16(b)(1)(iii).

In our view, an additional case cited by petitioner, *Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007) (en banc), is more instructive, although once again it involves a claim for asylum rather than for withholding of removal. While the Ninth Circuit recognized that petitioner, an ethnic-Chinese Christian, had established a bona fide subjective fear of future persecution, it concluded that she had failed to demonstrate that those fears were objectively reasonable. *Id*. at 1178-79. "[A] general, undifferentiated claim of the type brought by [petitioner] does not render an alien eligible for asylum." *Id*. at 1179. The court reasoned that to grant aliens asylum based upon generalized civil

strife would allow "the whole population of the asylum seeker's country to remain in the United States indefinitely." *Id.* at 1180 (quotations and internal punctuation omitted). To avoid that result, an alien must make some showing that he or she has been individually targeted and that the government has been unable or unwilling to contain the alleged ethnic or religious strife. Id. The court rejected petitioner's asylum claim because she had done neither of these things. For purposes of this appeal, we glean the following precept from Lolong: to establish a well-founded fear of future persecution petitioner must show, which he has not, that he "has been, or is likely to be, specifically targeted for persecution by any individual or group in Indonesia." *Id*. at 1181.

Finally, in *Wakkary v. Holder*, 558 F.3d 1049 (9th Cir. 2009), the Ninth Circuit considered the withholding of removal claim of an Indonesian man whose mother was ethnically Chinese and whose father was Indonesian as well as a Pentecostal Christian pastor. With respect to the issue relevant to our case – the likelihood of future persecution – the court first noted that the relevant regulations allow an alien to establish an objective rrisk of future persecution by showing either that there is a "pattern or practice of persecution of a group of persons similarly situated to the applicant" or that the applicant has established his own identification with the disfavored group so that "it is more likely than not that his [or her] life or freedom would be threatened upon return to that country." *Id.* at 1060-61 (citing 8 C.F.R. § 1208.16(b)(1)(i)-(ii)). With respect to the first ground, the Ninth Circuit reached the following conclusion:

> [T]he record in Wakkary's case does not compel the conclusion that there exists a pattern or practice of persecution against Chinese and Christians in Indonesia. Although the record contains evidence of widespread anti-Chinese and anti-Christian *discrimination* that affects a very large number of individuals, and although it is clear

that a certain portion of those individuals suffer treatment that rises to the level of persecution, the record does not establish that the situation in Indonesia is similar to the patterns or practices of persecution described in our prior case law.

*Id.* at 1061. Despite this conclusion, the court went on to note that an applicant for withholding of removal should be allowed to introduce evidence that he was a member of a "disfavored group" in order to help prove that he is entitled to relief. It stressed, however, that "[e]ven under the disfavored group approach, an applicant for withholding of removal must show that his chance of future persecution is greater than fifty percent." *Id*. at 1065. Thus, "[a]n applicant for withholding of removal will need to adduce a considerably larger quantum of individualized-risk evidence to prevail than would an asylum applicant like Sael, assuming their [sic] disfavored group evidence is of equal severity and pervasiveness, because the ultimate bar for withholding is higher than the bar for asylum." *Id*. at 1066. In short, he must show more than a "general, undifferentiated claim" based solely on the threat to the group as a whole; he must "establish the requisite likelihood of persecution under the 'singled out individually' rubric." *Id*. (citation omitted). Wakkery extends Lolong to withholding of removal claims and emphasizes that the bar is set even higher for the applicant to demonstrate that he has been singled out for persecution. Since we have already held that petitioner in this case has not made such a showing under the asylum-based framework of Lolong, it follows that we reach the same holding in light of Wakkery.

We have considered the Ninth Circuit cases discussed above because they are central to petitioner's argument. However, we note that he neither brought them to the BIA's attention nor did he argue that withholding of removal was justified by his membership in a "disfavored group" in his

brief to that body. As the government points out, this court may only review an order of removal if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *see also Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (arguments not explicitly raised to the BIA are not exhausted). We stress that, while we have opted to discuss the Ninth Circuit's cases involving "disfavored groups," we do not adopt their reasoning as the law of this circuit but simply note that even under that standard petitioner's withholding of removal claim fails.

Because we determine that petitioner did not show either past persecution or a well-founded fear of it in the future, we need not reach the alternative ground on which the BIA denied relief: petitioner "failed to carry his burden of establishing that it would not be reasonable for him to relocate within Indonesia." (A.R. 3) (citing 8 C.F.R. §§ 1208.13(b)(3)(i), 1208.16(b)(3)(i)). We note in passing, however, that the administrative record supports the denial of relief on this ground.

III.

The petition for review of the Board of Immigration Appeals is denied.