*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

          *v.*                                          No. 08-6023

JOHNNY ROBINSON,
                              *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 94-20030-001—Jon Phipps McCalla, Chief District Judge.

Decided and Filed: June 25, 2010

Before: MERRITT, COOK, and KETHLEDGE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Christopher E. Cotten, ASSISTANT UNITED STATES ATTORNEY,
Memphis, Tennessee, for Appellee. Johnny Robinson, Forrest City, Arizona, pro se.

          COOK, J., delivered the opinion of the court, in which KETHLEDGE, J., joined.
MERRITT, J. (pp. 3-4), delivered a separate opinion concurring in the result only.

———————————

**OPINION**

———————————

          COOK, Circuit Judge. Johnny Robinson appeals pro se from a district court order
granting his motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) and moves for
appointment of counsel on appeal. Because the district court properly recognized the
binding nature of the Guidelines, we affirm.

          A jury convicted the defendant of possessing cocaine base, conspiring to distribute
cocaine base, and carrying a firearm during a drug crime, and the court sentenced him to 248
months' imprisonment. After the Sentencing Guidelines' amendments for crack cocaine

reduced his Guideline range for the cocaine base charge to 151–188 months, Robinson moved for a reduced sentence.  The district court found that it lacked the authority under § 3582(c)(2) to reduce Robinson's sentence below the Guidelines and sentenced him to 151 months on the cocaine base charge, with a mandatory 60-month consecutive sentence for the firearms charge, for a total sentence of 211 months.  We review de novo the district court's interpretation of the statute. *United States v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009).

Robinson argues that the district court had the authority to further reduce his sentence.  The government insists that Robinson forfeited this issue by failing to properly develop the argument.  *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005). Whether or not Robinson sufficiently briefed the point, his argument fails because this court has definitively opined "that pursuant to 18 U.S.C. § 3582(c)(2), a district court is not authorized to reduce a defendant's sentence below the amended Guidelines range." *Washington*, 584 F.3d at 701; *see also Dillon v. United States*, 560 U.S. \_\_\_\_ (2010), slip op. at 11–13 (2010) (*Booker*'s constitutional holding inapplicable to Section 3582(c)(2) proceedings).

Accordingly, we affirm Robinson's sentence and deny his motion for the appointment of counsel.

---

**CONCURRING IN THE RESULT ONLY**

---

MERRITT, Circuit Judge, concurring.  I concur in the result in this case only because the Supreme Court is final and in a 7 to 1 decision, with Justice Stevens dissenting, held that the Sentencing Commission's effort to remove the power of courts to reconsider overly harsh sentences under 18 U.S.C. § 3582(c) was successful and that neither 18 U.S.C. § 3553(a) considerations nor *United States v. Booker* principles at 543 U.S.C. 220 (2005), may be followed by Article III judges.  The Sentencing Commission has the authority, according to *United States v. Dillon*, No. 09-6338, June 17, 2010, by mandatory rule, to entirely repeal individualized sentencing in such cases.  For the reasons stated by Justice Stevens in his dissent, I would reach the opposite conclusion, if I could, and apply the principle that under § 3582(c) a federal court should consider the "no-greater-than-necessary" principles of § 3553(a).

In addition, I would point out that 18 U.S.C. § 3661, unmentioned by the Court in *Dillon*, says:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive <u>and consider for the purpose of imposing an appropriate sentence</u>.

(Emphasis added.) This is a flat-out, general, statutory prohibition against restraining judges when they must pronounce sentence from considering the injustice of *Dillon's* sentence or any injustice in Robinson's sentence in this case.  The Sentencing Commission's rigid rule that continues in place overly harsh sentences gives no consideration to this statutory requirement.  So we continue on without hope for change with a sentencing system that Justice Stevens accurately describes as follows:

> Given the circumstances of his case, I can scarcely think of  greater waste of this Nation's precious resources. Cf. *Barber v. Thomas*, *ante*, at ____ (2010) (slip op. at 1) (KENNEDY, J., dissenting) ("And if the only way to call attention to the human implication of this case is to speak in terms of economics, then it should be noted that the Court's interpretation comes at a cost to the taxpayers of untold millions of dollars"). <u>Dillon's continued</u>

imprisonment is a truly sad example of what I have come to view as an exceptionally, and often mindlessly, harsh federal punishment scheme.

(Emphasis added.)

This "mindlessly harsh federal punishment scheme" is, as Justice Stevens says earlier in the opinion, now so bad that it should be regarded as "on dubious constitutional footing." In outlawing another such mindlessly harsh form of punishment more than 50 years ago — expatriation — the Warren Court said that our constitutional system "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). In a concurring opinion, Justice Brennan pointed out:

> In recent years we have seen such devices as indeterminate sentences and parole added to the traditional term of imprisonment. Such penal methods seek to achieve the end, at once more humane and effective, that society should make every effort to rehabilitate the offender and restore him as a useful member of that society as society's own best protection.

*Id*. at 111.

Justice Brennan referred to the effort to get rid of these values by using the punishment of expatriation as nothing "other than forcing retribution from the offender — naked vengeance." *Id*. at 111-12. The same thing is happening now once again. We have eliminated rehabilitation and the parole system from the penal system through the sentencing guidelines, and both judges and administrators (other than the Sentencing Commission) have lost all authority to later adjust a sentence that is too harsh. The guidelines themselves do not take into account rehabilitation, "maturing standards of decency," and other values like age, disability, marital status, and parenthood. Perhaps one of these days an American political institution will recognize what we have created and begin again to make some adjustments, as the Warren Court did in the 1960's and 1970's. But for the time being, we just have to live with a "mindlessly, harsh federal punishment scheme."